325 So.2d 211

**William O. ENGLISH**

v.

**STATE.**

**I Div. 585.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Oct. 28, 1975.

Ian F. Gaston, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Jack A. Blumenfeld, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was indicted for the offense of grand larceny. At arraignment, repre-

sented by retained counsel, a plea of not guilty was entered. Following this, appellant's counsel entered into "plea bargaining" with the District Attorney's staff. As a result of these negotiations the Assistant District Attorney, Mr. William G. Hughes, told appellant's attorney that in exchange for a guilty plea, he would recommend to the court that appellant be sentenced to one year and a day in the penitentiary. Counsel for appellant communicated this proposition to him and he agreed to plead guilty.

On the day the case was set for trial appellant appeared in open court with retained counsel and withdrew his prior not guilty plea and entered a plea of guilty to grand larceny. In a face-to-face confrontation between the court and appellant the court fully explained his *Boykin* rights to him. The court determined that the guilty plea was intelligently and voluntarily made and he accepted the plea of guilty. Appellant's counsel requested a pre-sentence report and the request was granted. The prosecutor for the state remained silent and did not apprise the trial court that he had entered into an agreement with appellant's counsel that he would recommend a sentence of one year and a day in the penitentiary if appellant pleaded guilty to the offense. After reviewing the pre-sentence report which showed that appellant had previously been convicted of felonies in both federal and state courts, the court asked if there were any recommendations from the state and Mr. Hughes replied, "No, sir." Appellant's counsel then and there made known to the court that he and Mr. Hughes had entered into negotiations concerning a guilty plea and that Mr. Hughes told him he was going to recommend to the court that appellant receive a sentence of one year and a day in the penitentiary. Following this there were a number of statements made to the court by Mr. Hughes. We think it well to quote from the record to get a better understanding as to whether appellant's guilty plea was induced by representatives from the District Attorney's office.

"MR. HUGHES: Your Honor, in fairness to Mr. Friedlander, I did—at the last time that was going to be my recommendation, a year and a day, I believe it was, but I was under the impression that the Court was going to rule solely on the basis of this. I didn't mean to mislead you that we had never talked about anything. It was my . . .

"THE COURT: You were under the impression of what?

"MR. HUGHES: I was going to recommend that but I was under the impression that the Court was going to base its decision strictly on the pre-sentence report.

\* \* \* \* \* \*

"MR. HUGHES: Yes; I understand. I just didn't want it to look like I was trying to put Mr. Friedlander in bad light."

Thereupon the court sentenced the appellant to a term of seven years in the penitentiary. Counsel for appellant immediately said:

"Judge, based upon—before Your Honor finishes, based upon the plea bargaining I had with Mr. Hughes, I would ask the court to allow me to withdraw my plea of guilty and ask for the matter to be set down for trial."

"THE COURT: I deny your motion.

"MR. FRIEDLANDER: I would like to give notice of appeal.

"THE COURT: All right; note the notice of appeal."

Quoting further from the record:

"MR. FRIEDLANDER: Based upon the fact that the plea was entered, based upon my negotiations with Mr. Hughes and the fact that he was going to recom-

mend a year and a day, and I thought the Court would go along with that.

"THE COURT: Well, as I have said, as I have tried to make it plain to Mr. Hughes, if he did not know it, the Court does not have to accept the recommendation by the—I do not know if Mr. Hughes knew the past record of the Defendant whenever he made that recommendation.

"MR. FRIEDLANDER: He did, Your Honor.

"MR. HUGHES: Your Honor, I think it was gone into, the man knew that he was not bound by anything I said, and I told Mr. Friedlander back when it was . . .

"THE COURT: Well, Gentlemen, I do not want to go further on it. I am going to set a bond of $10,000.00 on the appeal. Take the prisoner with you."

On March 7, 1975, a hearing was held on a motion to reconsider the sentence or, in the alternative, to allow appellant to withdraw his plea of guilty. At this hearing many statements were made to the court by Mr. Hughes and counsel relative to the plea bargaining. Mr. Hughes told the court that he and the appellant's counsel had talked in terms of a year and a day and that was going to be his recommendation at that time.

The court asked Mr. Hughes if he made a recommendation to the court on the day sentence was imposed and he replied, "I think I just expressed to the court that we had discussed that and I had told Mr. Friedlander at one time that would be my recommendation. It was prior to the pre-sentence, though." The court pressed Mr. Hughes for a direct answer and he stated, "I don't believe I did judge. That is the only thing I can tell you."

We quote further from the record:

"MR. HUGHES: Your Honor, my recollection of this is that originally Donnie and I talked about the matter. I told him that I thought the man should get a year and a day. I knew the man had a record. I didn't know anything else about what other pre-sentence he might or might not have had.

"THE COURT: You knew he had a record or did you know his record?

"MR. HUGHES: I knew—I knew—Judge, I think I knew his record.

"MR. FRIEDLANDER: He knew he had a bad record.

"MR. HUGHES: I knew he had a record. I told Donnie at that time that I thought he should get at least that.

"THE COURT: You knew all of the details of his record?

"MR. HUGHES: No, sir; I just—I knew he had some convictions, that is all, Judge.

"THE COURT: All right.

"MR. HUGHES: At that time, I told Donnie that, you know, I thought the man should get at least a year and a day, and that that probably would by my—I guess maybe I told him at that time that that would be my recommendation. However, we came in that day, the man entered a plea, Donnie asked for a pre-sentence. Now, I don't know what the thing—the pre-sentence said. We came back before the Court for sentencing and I assume Your Honor saw the report. I don't know what is in the report.

"THE COURT: You still have not seen the report?

"MR. HUGHES: No, sir. I still haven't —you . . .

"THE COURT: You don't know the record of this Defendant?

"MR. HUGHES: I know—I have his rap sheet, Judge, but I don't know what else, if anything else, is in the report, is

what I am saying. You have that knowledge that I do not.

"MR. FRIEDLANDER: Well, does the rap sheet show that he had served three or four times before?

"MR. HUGHES: It—I . . .

"MR. FRIEDLANDER: It shows numerous convictions and we talked about it back then, myself and Mr. Hughes.

"MR. HUGHES: I just don't want to mislead the Court . . .

"THE COURT: You are saying he did know the details of his record; is that right?

"MR. FRIEDLANDER: Yes, sir; he knew the details.

"MR. HUGHES: I have his rap sheet, Judge. I don't know anything else about the man . . .

"THE COURT: Well, I mean the rap sheet is his record; is it not?

"MR. HUGHES: Yes, sir; but I mean I don't know what all the Probation Officer goes into in a pre-sentence, if they go into the neighborhood or talk to people or whatever, I don't know anything else about it.

"THE COURT: Well, what I asked you, did you know his record at the time you were recommending or talking about a year and a day?

"MR. HUGHES: Yes, sir; I knew what his actual rap sheet contained."

Appellant testified at this hearing and so did Georgia Mae Fowler who was implicated in the same crime with appellant. Appellant testified that his attorney told him that he had discussed his case with Mr. Hughes and that Mr. Hughes told him he was going to recommend that he receive a sentence of one year and a day.

Georgia Mae Fowler testified that Mr. Friedlander was her attorney and that she was present when he related to appellant his agreement with Mr. Hughes. She further testified that Mr. Friedlander told her Mr. Hughes was going to recommend probation for her; that she got a five year sentence which was suspended and she was place on probation for five years.

In *Blow v. State,* 49 Ala.App. 623, 274 So.2d 652, Judge DeCarlo writing for a unanimous court held:

"The disposition of criminal cases by negotiated pleas of guilty (plea bargaining) resolves the overwhelming majority of criminal matters in this country every year. Many agree and others disapprove, but the result is inescapable that plea negotiations have been with us a long time and are used universally. This procedure has served the administration of criminal justice well, and any negotiations wherein two trained professionals submit their findings to a learned judge for his concurrence has a forthrightness and fairness deserving of enforcement."

In *United States v. Brown,* 500 F.2d 375, the Court of Appeals, Fourth Circuit, held that when a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, the Supreme Court of the United States held that where the state failed to keep a commitment concerning a sentence recommendation on a guilty plea, the court would remand the case to the state court to decide whether the circumstances of the case required only that there be specific performance of the agreement on the guilty plea, or whether circumstances required that the defendant be granted an opportunity to withdraw his plea of guilty.

The court went on to say:

" * * * The disposition of criminal charges by agreement between the prose-

cutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v. United States,* 397 U.S. 742, 751–752, 90 S.Ct. 1463, 1470–1471, 25 L.Ed.2d 747 (1970).

\* \* \* \* \* \*

This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

\* \* \* \* \* \*

We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendations did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i. e., the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge."

■ Our holding today is not to be construed as binding the trial court to the agreement struck between the prosecutor and defense counsel. What we do hold is that if the trial court decides not to carry out the agreement reached between the prosecutor and counsel for the accused, the accused must be afforded the opportunity to withdraw his guilty plea on motion promptly made, as was done in this case.

See *Waldrop v. State,* 54 Ala.App. 163, 306 So.2d 29.

■ For the failure of the trial court to grant appellant's motion to withdraw his guilty plea this case is reversed and remanded for further proceeding not inconsistent with this opinion.

Reversed and remanded.

TYSON, DeCARLO, and BOOKOUT, JJ., concur.

CATES, P. J., concurs specially.

CATES, Presiding Judge (concurring specially).

I think that the next to the last paragraph of Judge Harris's opinion puts the trial judge in the position of having no discretion in sentencing where counsel for the parties have attempted to agree. See *Aaron v. State*, 43 Ala.App. 450, 192 So.2d 456.

However, I vote to reverse but solely because the prosecuting and defense attorneys failed to put their agreement in writing. See Rule 14, Rules of Practice in Circuit * * *° Courts, Sup.Ct. Rule 20 and Rule 47, ARAP.