Jerome Pelmer was indicted and tried on one count of grand larceny, § 13-3-50, Code of Alabama 1975, and one count of buying, receiving or concealing stolen property, § 13-3-55, Code of Alabama 1975, stemming from a purse snatching incident in Birmingham, Alabama. The trial court, pursuant to Pelmer's motion to exclude State's evidence made at the close of the State's case, granted the motion as to the latter count but submitted the determination of the larceny count to the jury, which found Pelmer "guilty as charged." He was sentenced by the trial court to five years imprisonment.
Mary Rutledge, called on behalf of the State, testified that, between 12:30 and 1:30 p.m. on May 23, 1979, she had been running some errands at the Century Plaza shopping center in Birmingham, and was returning to her car when "I saw this car pull up. I could sense it over my left shoulder. I thought it was stopping to let someone out" (R. 18). Instead, she stated, a person "ran to me and said, `Get me that purse,' and snatched my purse and we started struggling" (R. 18). Mrs. Rutledge described the car as a white Ford Torino, and the person who grabbed at her purse as a black male, about six feet tall, with plaited hair. After a period of two of three minutes, the black male was able to wrest the purse from Mrs. Rutledge and then return to the Torino, which contained several other black persons. Mrs. Rutledge stated that her purse was worth about $30.00, and that it had contained her eyeglasses worth $135.00, her husband's watch, which she had taken to be repaired, and $3.00 in cash.
She further testified that, as the Torino drove off, she screamed for someone to stop it, and that another vehicle blocked the Torino, forcing it to turn around and proceed on another route. She noted the license plate number of the car to be ECG-999, and she furnished the police with this information. Mrs. Rutledge identified appellant as the person who had grabbed her purse and stated that she had seen him later on that same day, some three hours *Page 586 
after the incident at the police station. She testified that she recovered her purse and checkbook, and that her husband's watch was later returned to her by the police.
On cross-examination, Mrs. Rutledge denied that she had earlier told the prosecutor and the police that she was not sure of the identity of appellant as the one who took the purse, but did acknowledge that appellant's hair had been arranged differently.
Pauline Posey testified that, on May 23, 1980, she was also present at the Century Plaza shopping center when she saw a man "coming toward me. He came from just out of nowhere" (R. 34). She stated that she saw the man "grab this lady and sling her down" (R. 35), and that she commenced to scream and run toward the two. By the time she arrived at the spot where the attack had occurred, the man had fled to a car containing two other persons. Ms. Posey stated that she wrote down the tag number of this car and gave it to a by-stander to phone in to the police. The witness identified appellant as the man who had taken the purse from the other woman.
On cross-examination, Ms. Posey testified that she had noticed that the assailant's hair was "twisted up" and that he had been wearing a "dingy white looking" cover-all, but that she was not certain as to whether he had had facial hair. She further stated that she had first identified appellant as the assailant on the day before the trial while he was in the courtroom, but admitted that he had been the only black person in the room at the time. Ms. Posey also stated that she had told Mrs. Rutledge that she had identified appellant as Mrs. Rutledge's assailant.
John Harold Jones, a patrolman with the Birmingham Police Department, testified that he was working on May 23, 1980, on the day shift when around 2:00 p.m. he observed appellant in a 1974 Ford Torino with the license plate number ECG-999. Officer Jones stated that he had heard over his radio that this vehicle had been involved in a purse snatching at Century Plaza shopping center, and that it was registered to a James Lewis, residing on 44th Place North. The officer stated that he proceeded to the vicinity of that location to keep a watch out for the Torino and that he found the car parked there. As he passed the vehicle it began to move away from the curb, and Officer Jones stopped it. The officer stated that he removed three black males from this car and ordered them to "spread" on the vehicle, at which point one broke and ran into a crowd which had gathered. Officer Jones testified that he then subdued the remaining two and placed them in his police car until the arrival of another police car, at which time the two were separated. Officer Jones further stated that he searched the Torino and found a child, which he released to the custody of relatives, and a purse.
Officer Jones stated on cross-examination that appellant told him that Jimmy Gregg had run from the scene, but that he (the officer) did not know whether Gregg was ever apprehended. He further stated that he found the purse on the back floorboard, and that it was of a composition that did not lend itself to fingerprint examination.
On re-direct, the witness testified that he remembered that appellant had plaited hair at the time of arrest and that he was un-plaiting the hair during the drive to the police station.
George Hayes, a detective sergeant with the same department, testified that he conducted the follow-up investigation of the purse snatching at Century Plaza on May 23, and that he had talked to Mary Rutledge on the afternoon of that day at the police station during the course of that investigation. He also stated that he saw appellant that day as well at the station, and had occasion to talk with him after advising him of hisMiranda rights from a printed card. Appellant, upon being asked if he understood his rights, said, "I do" (R. 62), and further agreed to talk to him and Officer Jones, who was also present. Sergeant Hayes further stated that appellant was not promised anything and that he was not given any reward or hope of reward, nor was he threatened, intimidated, or *Page 587 
coerced. According to Sergeant Hayes, appellant stated that, though he had been present when Mrs. Rutledge's purse was snatched, Jimmy Gregg had actually taken the purse and that a watch from the purse had later been sold at a local business establishment. The rest of the purse's contents was discarded on Interstate 59 near the Tallapoosa Street exit. Sergeant Hayes testified that his search at that location proved negative, but that he did recover the watch at the establishment named by appellant. According to the witness, appellant had, at the time of his arrest, plaited hair. He further stated that James Lewis was arrested with appellant, but that Jimmy Gregg had never been apprehended. Mrs. Rutledge, when shown appellant and Lewis, made no positive identification, according to Sergeant Hayes.
At this point the State rested, and appellant's motion to exclude was granted as to the buying, receiving, or concealing count of the indictment.
Appellant did not present any witnesses nor did he testify at trial.
 I
Appellant's sole contention on this appeal is that he was penalized for exercising his right to a trial by jury by receiving a five year sentence when, if he had pled guilty the day before, as he desired, he would have only been sentenced to two years by virtue of a plea-bargaining arrangement with the prosecutor.
It appears from the record that the prosecutor, counsel for appellant and appellant had all agreed that, if appellant would plead guilty to the buying, receiving or concealing count of the indictment, a sentence of two years would be recommended to the court. It is evident that the trial court was indeed made aware of the existence of this agreement, and confirmed its terms with appellant, although it is by no means clear that the court intended to abide by the agreement, or in fact accept appellant's guilty plea. Pursuant to the expressed desire of appellant to so plead, however, the court proceeded to examine him concerning the voluntariness of the proposed plea as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969), and it additionally appears that appellant executed some type of "Ireland" form, Ireland v. State, 47 Ala. App. 65, 250 So.2d 602 (1971), though the form was omitted from the record. See R. 5, 101-105 (we need not quote the colloquy between the trial court and appellant, as it is evident that the voluntariness of the proposed guilty plea is not in issue here). After the Boykin colloquy, but before formally accepting or rejecting a plea from appellant, the court further questioned him as to the ramifications of a guilty plea in light of the provisions of the Habitual Offender statute, §13A-5-9, Code of Alabama 1975 (Acts 1977, No. 607, p. 812, § 1235; Acts 1979, No. 471, § 1; Acts 1979, No. 79-664, § 1):
 "THE COURT: * * * How do you plead to the charge of buying, receiving and concealing of stolen property? I might also say this: This is something else I really ought to tell you. You know about it because your lawyer and you were talking about it. You understand under the new code it has a habitual offender statute. Do you know what I mean when I say that? If you have another trial, that occurred after January 1, where the offense occurred after January 1, the way the courts are construing this at the moment, all prior felonies can be placed against you. As I recall, three is life imprisonment, is it not?
 "MR. BARBER: With three priors, the fourth conviction of a Class A felony.
. . . . .
 "THE COURT: In any event, I'm trying to tell you this felony you're considering now pleading guilty to, plus the two prior felonies that you already have acquired, when you have another conviction it is going to be very, very hard on you; do you understand that?
"THE DEFENDANT: Yes, sir.
 "THE COURT: And I want to particularly tell you I was here when you were just arrested on a robbery charge. You *Page 588 
were just arrested on it, so you're looking right in the face of a robbery trial right now. Did that occur before or after January?
 "MR. BARBER: It's my understanding it was around — I believe the warrant was issued yesterday, so I would assume it was after.
 "THE COURT: That's a very, very serious matter. In other words, because you were just arrested on a Class A felony occurring after January 1 and you were found guilty of that Class A felony, that's life imprisonment; is that right, Mr. Barber?
"MR. BARBER: Yes, sir.
"THE COURT: Without parole?
"MR. BARBER: Without parole.
 "THE COURT: Mr. Pelmer, this is a very, very serious step that you're taking in pleading guilty to this case, I'm telling you right now from the bench, because you're looking — I'm trying to tell you you don't have something in the offing that you may or may not be arrested for, you have been arrested on the writ that was just given to you, served to you, that took you upstairs right within the past two hours. This is a very serious step to take, because if you're guilty of this robbery and it's a Class A felony, you're looking at life imprisonment. You better think real, real good about this plea because this is important.
"If you want to talk to him about this again —
 "MR. BRYAN: I have discussed it with him at length. I would ask maybe if he could have a few more minutes to think about it.
"THE COURT: I think so.
 "MR. BRYAN: Very good. Could he talk with his wife for a few minutes?
 "THE COURT: Well, I think he could talk with his wife. Let him talk with his wife. Let him go back in that witness room and let both you gentlemen go back with him.
 "(Whereupon, a recess was had, after which the following proceedings were had and done:)
 "THE COURT: Mr. Pelmer, I'm sure I don't have to tell you this takes a lot of serious thought. I want to emphasize one thing, for the record, your lawyer, Mr. Bryan, is probably the best criminal lawyer in this county. I would say that absolutely unequivocably, and I'm sure any judge in this courthouse would agree. If he's not the best, he's among the best, let's put it that way. His advice deserves a lot of attention. I don't know how long he's been practicing, but I know from my time here I have seen him practice all kinds of criminal cases. He's as good as any lawyer in this whole county. You just give his suggestions a whole lot of thought and his advice a whole lot of thought.
 "All right. We'll recess until tomorrow morning. Everybody take your seats. "I think while we're here, and for the benefit of this man, I'm going to read into the record what the code says. . . . (R. 8-12)
The following day, appellant pled not guilty, and was subsequently tried and convicted by a jury.
Ordinarily, of course, this Court is not free to review the propriety of a sentence which is within the statutorily prescribed limits, as is this sentence of five years. Jenkinsv. State, Ala.Cr.App., 367 So.2d 587 (1978), cert. denied, Ala., 367 So.2d 590 (1979); § 13-3-50, Code of Alabama 1975 (sentence upon conviction of grand larceny "not less than one nor more than ten years"); but see, Proposed Alabama Rules of Criminal Procedure 31.2 (providing a scheme for sentence review). The issue raised by appellant, however, concerns interference with the basic constitutional right to a trial by jury, U.S. Const. Amend. VI, Ala. Const. Art. I, § 6, and in this particular context we must examine the propriety of the trial court's action in sentencing appellant to what amounts to an enhanced term of imprisonment.
While we have found no Alabama decision directly on point, we agree with the numerous cases from the Federal and other *Page 589 
state courts that a defendant may not be punished with an enhanced sentence after preliminary plea negotiations solely
because he elected to take his case before a jury; the effect of such a practice would obviously be "to chill the assertion of constitutional rights by penalizing those who choose to exercise them," United States v. Jackson, 390 U.S. 570,88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). See, United States v. Wiley,278 F.2d 500 (7th Cir. 1960); Baker v. United States,412 F.2d 1069 (5th Cir. 1969), cert. denied, 396 U.S. 1018,90 S.Ct. 583, 24 L.Ed.2d 509 (1970); United States v. Stock-well,472 F.2d 1186 (9th Cir.), cert. denied, 411 U.S. 948,93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); Hess v. United States,496 F.2d 936 (8th Cir. 1974); United States v. Derrick, 519 F.2d 1 (6th Cir. 1975); United States v. Capriola, 537 F.2d 319 (9th Cir. 1976); Blackmon v. Wainwright, 608 F.2d 183 (5th Cir. 1979);People v. Morales, 252 Cal.App.2d 537, 60 Cal.Rptr. 671
(1967), cert. denied, 390 U.S. 1034, 88 S.Ct. 1432,20 L.Ed.2d 293 (1968); People v. Snow, 26 Mich. App. 510, 182 N.W.2d 820
(1970), affirmed in part, 386 Mich. 586, 194 N.W.2d 314 (1972);Buckner v. State, 56 Wis.2d 539, 202 N.W.2d 406 (1972); Peoplev. Morgan, 14 Ill. App.3d 232, 302 N.E.2d 152 (1973), affirmed,59 Ill.2d 276, 319 N.E.2d 764 (1974); Commonwealth v. Staley,229 Pa. Super. 322, 324 A.2d 393 (1974); City of Cincinnati v.Clardy, 57 Ohio App.2d 153, 385 N.E.2d 1342 (1978). Likewise, however, we must acknowledge the difficulty of ascertaining when a trial judge has an improper motive in sentencing a defendant to a term greater than that discussed at some previous point, as, more often than not, a judge furnishes no reasons for his decision in that regard.
The mere fact, standing alone, that a sentence meted out after a jury trial is greater than one possibly discussed in preliminary negotiations is not, in itself, indicative of any improper motive. United States v. Cunningham, 529 F.2d 884 (6th Cir. 1976); United States v. Araujo, 539 F.2d 287 (2d Cir.),cert. denied, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593
(1976); People v. Busch, 15 Ill. App.3d 905, 305 N.E.2d 372
(1973); People v. Houston, 21 Ill. App.3d 209, 315 N.E.2d 192
(1974), cert. denied, 420 U.S. 936, 95 S.Ct. 1145,43 L.Ed.2d 412 (1975). This stems from the accepted proposition that no constitutional difficulty is presented by a sentencing scheme which allows for some sentence concessions if a person pleads guilty, as opposed to seeking a jury trial. See, Brady v.United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747
(1970); Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977,36 L.Ed.2d 714 (1973); Bordenkircher v. Hayes, 434 U.S. 357,98 S.Ct. 663, 54 L.Ed.2d 604 (1978); Corbitt v. New Jersey,439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); Cf. ABA Standards Relating to Pleas of Guilty § 1.8 (a) (listing factors to be applied in such instances). Similar propositions have been adopted in other factual contexts, and thus a greater sentence may be meted out in certain instances upon a retrial after the reversal of the original conviction, North Carolinav. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (must show aggravating circumstances occurring since original trial), and see Proposed Alabama Rules of Criminal Procedure, 26.12 (a) (same), or upon a trial de novo, where such a system is employed. Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953,32 L.Ed.2d 584 (1972); Howell v. City of Birmingham, Ala.Cr.App., 383 So.2d 567, cert. denied, Ala., 383 So.2d 570
(1980) (holding there was "no unconstitutional `price' placed on the defendant's demand for a jury trial on appeal from the municipal court"); Clark v. City of Mobile, Ala.Cr.App.,357 So.2d 675, cert. denied, Ala., 357 So.2d 680 (1978). Yet, the courts have made a distinction, albeit not always clear, between an increased sentence after a not guilty plea based upon various factors, and one imposed solely as a penalty for seeking a trial by jury, holding that the latter is an improper motive. The comments to ABA Standards Relating to Pleas of Guilty § 1.8 (b) (prohibiting this motive in sentencing) state:
 "The Advisory Committee believes that there is an essential difference between system A, in which defendants who go to *Page 590 
trial receive the greatest punishment justifiable under accepted principles of penology and some defendants who plead guilty or nolo contendere
receive something less because of the circumstances surrounding their plea, and system B, in which disparity results from giving defendants who stand trial greater punishment than can be justified." (Footnote omitted)
We must thus agree with the cited authorities that the record must clearly indicate, over and above the fact of disparate sentences, that the trial judge had some vindictive motive in sentencing a defendant to an enhanced term.
To this end, appellant necessarily premises much of his argument on the assumption that the trial court would have agreed with the plea bargain and sentenced him to two years in accordance therewith, and thus the court possessed no reason to increase appellant's sentence after a jury trial. While appellant relies on North Carolina v. Pearce, supra, and its progeny, which would require a showing of aggravating circumstances between the time of an original trial and a retrial at which an increased sentence is given, we find the decision of United States v. Stockwell, supra, more on point. In Stockwell, the trial judge actually told the defendant that, if he were to plead guilty, he would receive a three year sentence, but, if he elected a not guilty plea and jury trial, he would be sentenced to between five and seven years upon conviction. The defendant pled not guilty, was convicted and sentenced to seven years. On appeal the case was remanded for resentencing, the Ninth Circuit stating that:
 ". . . [O]nce it appears in the record that the court has taken a hand in plea bargaining, that a tentative sentence has been discussed, and that a harsher
 sentence has followed a breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty. In such a case, the record must affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty."
In reading Stockwell with other Federal cases on this point, we are of the opinion that Stockwell would be limited to those instances where the trial court, and not the prosecutor, plea bargains with a defendant; in such instances, Stockwell would mandate an affirmative showing that the trial judge had other reasons for the enhanced sentence.
On the facts of the instant case, however, we do not find that the trial court had either accepted the two year sentence [indeed, the court merely acknowledged that the sentence "has been recommended to me" (R. 7)], or promised appellant that he would receive that sentence. Cf. Blackmon v. Wainwright, supra
(comments of judge did not amount to offer); Griswold v. Cityof Enterprise, Ala.Cr.App., 384 So.2d 1219 (1980) (error to disallow defendant's withdrawal of guilty plea when court refuses to be bound by terms of plea bargain); English v.State, 56 Ala. App. 704, 325 So.2d 211, cert. denied, 295 Ala. 401, 325 So.2d 216 (1975) (same); Proposed Alabama Rules of Criminal Procedure, 14.3 (c) (judge may be bound by acceptance of terms); Fed.R.Crim.Proc., 11 (e) (judge not to enter plea negotiations); ABA Standards Relating to Pleas of Guilty, § 3.3 (a) (same). Similarly, it is not readily apparent that the trial judge would have in fact accepted appellant's plea of guilty, if it had been offered, given the harsh provisions of the Habitual Offender act and its potential application to appellant; the acceptance or rejection of the plea would have been committed to the court's sound discretion in such an instance. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495,30 L.Ed.2d 427 (1971); James v. State, Ala.Cr.App.,380 So.2d 995 (1979), cert. denied, Ala., 380 So.2d 999 (1980). We thus decline the opportunity to require a trial court to supply reasons affirmatively upon the record in a situation where it has not manifested itself as a party to a plea bargain, but we do cite with approval the language of the Sixth Circuit inUnited States v. Derrick, supra: *Page 591 
 "It is difficult to urge that trial courts express themselves freely upon the record when it can be shown that in doing so, they subject themselves to greater risk of reversal or remand. The proper answer, we believe, lies in the understanding of the respective roles of the trial bench and the appellate court in the judicial system and in understanding that the ends of justice are best and necessarily served when each performs its task openly and honestly, even at the risk of exposing error."
We have, however, carefully examined the record and conclude that there is no indication that the trial judge was in any manner seeking to punish appellant for electing a jury trial on a not guilty plea. In sentencing appellant the following was said:
 "THE COURT: All right. You heard the verdict. In accordance with the jury verdict the defendant is adjudged guilty. "Do you have anything to say before sentence is pronounced against you?
 "THE DEFENDANT: I just want to explain why the kid was in the car at the time. Your Honor, my kid had a bad fever and I was trying to get away to Century Plaza to get some money from my wife. She worked at El Chico at the time. Boom, it just happened all at once, you know. But I do regret having the kid in the car at the time.
 "MR. BRYAN: I might mention just if the Court will consider in sentencing, that he has been employed since he's been out of the service continually — Well, through yesterday — at El Chico.
"THE COURT: Service carries great weight with me.
 "MR. BRYAN: And I might also ask the Court to bear in mind the defendant wanted to plead guilty for the extent of his involvement in this yesterday, and it was only in response to my suggestion and my advice that this case was tried in view of this new habitual offender statute.
 "THE COURT: The fact that he's found guilty in no wise mitigates or slackens or slows at all your advice. Your advice was just as right as rain in my judgment. "All right. Be the judgment and sentence of the Court that the defendant be imprisoned in the penitentiary for a term of 5 years. . . ." (R. 94-95)
While the court did not furnish any reasons as to why appellant received five years, either during sentencing or at the hearing on the motion for new trial, we note that the court was aware of appellant's history of prior felony convictions (R. 73-74). Further, appellant was found guilty of grand larceny by the jury, but had apparently discussed a two year sentence on the buying, receiving, or concealing count. When these factors are combined with the testimony as adduced at trial, ample reasoning exists to support the trial court's actions. Authorities cited. In any event we are not inclined to second guess the trial court on this matter where, as here, noimproper motives affirmatively appear.
Having carefully examined the trial record, we find that a jury question was presented as to appellant's guilt and determine that there were no improprieties in the sentencing process which would dictate a remand. The judgment and sentence below are therefore
AFFIRMED.
All the Judges concur.