HARWOOD, Justice
(dissenting).
I respectfully dissent from the decision of this Court to deny the State’s petition *602 for a writ of certiorari to the Court of Criminal Appeals. I believe the writ should issue in this case on the ground asserted by the State in its petition that there is a “conflict” between the decision of the Court of Criminal Appeals in this case and the decision of this Court in State v. Holman, 486 So.2d 500 (Ala.1986). See Rule 39(a)(1)(D), Ala. R.App. P.[1]
Because this Court’s denial of the State’s petition in this case is not accompanied by a written opinion (a standard and entirely proper practice), I will set out the pertinent facts, as provided either by the opinion issued by the Court of Criminal Appeals, Nelson v. State, 866 So.2d 594 (Ala.Crim.App.2002), or the State’s petition for the writ of certiorari filed on February 7, 2003, in which the State verified certain additional facts in full compliance with the procedure prescribed by Rule 39(d)(5)(A), Ala. R.App. P.
On February 11, 2002, Gerald Ladon Nelson, pursuant to a plea agreement he had entered into with the State, pleaded guilty to' the offense for which he was indicted — rape in the first' degree. The sentence range for first-degree rape, a Class A felony, is not less than 10 years nor more than 99 years or life imprisonment in the penitentiary. § 13A-6-61(b) and § 13A-5-6(a)(l), Ala.Code 1975. The factual basis for the plea presented to the trial court revealed that Nelson, who was 39 years old at the time of the rape, had supplied his 16-year-old niece with alcoholic beverages, had taken her to a motel room, and had had sexual intercourse with her against her will. Nelson’s guilty plea was the product of a “plea agreement” he had entered into with the State. Pursuant to that agreement, in exchange for his plea, he would be sentenced to 15 years’ imprisonment; he could apply for probation; and the State would recommend that he be placed on probation. Before accepting Nelson’s guilty plea predicated on that plea agreement, the trial court addressed Nelson personally in open court in the presence of his , counsel and engaged in a colloquy with him, in full conformity with the requirements of Rule 14.4(a), Ala. R.Crim. P. At a point in the colloquy, the following transpired:
“THE COURT: Has anybody threatened you or coerced you or harassed you in any way to get you to plead guilty?
“[Nelson]: No. sir.
“THE COURT: Has anybody promised you anything, offered you any reward or any inducement of any kind whatsoever to get to you [sic] plead guilty?
“[Nelson]: Just probation, sir.
“THE COURT: Well,. I mean, they can’t promise you probation.
“[Defense counsel]: He just understands that it was going to be recommended as part of the plea bargain.
“THE COURT: You understand that the State is recommending a certain number of years and that they may recommend probation, but Pm not bound to go by it? You understand that?
“[Nelson]: Yes, sir.
“THE COURT: You understand that?
“[Nelson]: Yes, sir.
“THE COURT: So let me ask you again, has anybody promised you any *603 thing, offered you any reward or any inducement to get to you [sic] plead guilty?
“[Nelson]: No, sir.
“THE COURT: Now, you understand the State can recommend a sentence and they can recommend probation, but there’s nothing that binds me to go by that recommendation.
“[Nelson]: Right.
“THE COURT: You understand that?
“[Nelson]: Yes, sir.
“THE COURT: And with that, you still want to interpose a plea of guilty knowing that?
“[Nelson]: Yes, sir.”
After accepting Nelson’s guilty plea and imposing the agreed-upon sentence, the trial court scheduled a hearing on Nelson’s application for probation on April 4, 2002. On February 26, 2002, however, Nelson moved to withdraw his guilty plea, asserting that he had pleaded guilty based on the fact that the State had agreed that it would recommend probation but that “[t]he court has not abided by this agreement and placed him on probation within 30 days after sentencing,” which timetable, he asserted, required him to file his motion to withdraw his guilty plea “to preserve his right to appeal this decision if the court, in fact, does not place him on probation at the probation hearing.”[2]
On March 5, 2002, the trial court denied the motion, stating:
“State cannot guarantee [Nelson] that he will be placed on probation. [Nelson’s] attorney knows that and [Nelson] knew that when he [pleaded] guilty. Court never agreed to place [Nelson] on probation within 30 days. [Nelson] knew probation hearing would not be held within 30 days at time of plea. Motion denied.”
On April 4, 2002, the defendant’s probation hearing was conducted as scheduled, and the trial judge denied Nelson’s request for probation.[3]
Nelson timely appealed to the Court of Criminal Appeals. That court, relying on its prior decisions in Alston v. State, 455 So.2d 264 (Ala.Crim.App.1984); Brown v. State, 495 So.2d 729 (Ala.Crim.App.1986); and Taylor v. State, 677 So.2d 1284 (Ala.Crim.App.1996), concluded that the trial judge had exceeded his discretion in not allowing Nelson to withdraw his guilty plea; that court, therefore, reversed the trial court’s judgment and remanded the case for proceedings consistent with its opinion.
The State had argued to the Court of Criminal Appeals that this Court’s opinion in Holman should control rather than the line of cases exemplified by Brown v. State.[4]
Virtually all of the opinions on point in the line of cases cited by the Court of Criminal Appeals refer to Blow v. State, 49 Ala.App. 623, 274 So.2d 652 (Ala.Crim.App.1973). In that case, the defendant, pursuant to a plea bargain, pleaded guilty to the illegal sale of narcotics; in return he was to receive a three-year sentence, but the sentencing hearing was to be deferred until February 1972. When the defendant *604 failed to appear on the scheduled February hearing date, the trial judge sentenced him to five years’ imprisonment based on his failure to appear “and further violations.” 49 Ala.App. at 624, 274 So.2d at 652. Referencing only the opinion of the United States Supreme Court in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971),’ the Court of Criminals Appeals concluded that the trial judge’s decision to reject the three-year sentence feature of the plea bargain, after having previously concurred with it, and to impose a five-year sentence, resulted in a “broken bargain.” “After advising the [defendant] that he could not take the recommended plea [the trial judge] should have afforded him an opportunity to withdraw it.” 49 Ala.App. at 624, 274 So.2d at 652.
Santobello, in turn, involved a situation where the State of New York agreed to permit a defendant indicted for two felony gambling offenses to plead guilty to a lesser-included gambling offense, which would carry a maximum prison sentence of one year. “The prosecutor agreed to make no recommendation as to the sentence.” 404 U.S. at 258, 92 S.Ct. 495. At the subsequent sentencing hearing, however, a prosecutor, not the one who had negotiated the plea agreement, recommended the maximum one-year sentence, citing the defendant’s criminal record and his alleged links with organized crime. Defense counsel immediately objected, based On the State’s earlier promise that it would make no sentence recommendation. The trial judge imposed a one-year sentence. When the case finally reached the Supreme Court, that Court opined:
“The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called ‘plea bargaining’ is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charged was subjected to a full-scale trial, the States and the Federal government would need to multiply by many times the number of judges and court facilities.”
404 U.S. at 260, 92 S.Ct. 495. The Court admonished that a guilty plea entered in reliance on a plea bargain must be attended by safeguards. “Those circumstances will vary, ■ but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” 404 U.S. at 262, 92 S.Ct. 495. The Court vacated the prior judgment and remanded the case to the state court for a determination whether the defendant should be accorded specific performance of the plea agreement, with resentencing by a different judge, or whether he should be given the opportunity to withdraw his plea of guilty.
From that point forward, there has never been any dispute in the opinions of either this Court or the Court of Criminal Appeals with the proposition that if the State makes certain promises in connection with a plea bargain, the State must follow through on those promises or else there is a “broken bargain” entitling the defendant to withdraw a guilty plea entered in reliance on them.
Another early case of the Court of Criminal Appeals relying on Santobello, and also on Blow, was English v. State, 56 Ala.App. 704, 325 So.2d 211 (Ala.Crim.App.1975), which, in turn, has often been cited in subsequent opinions. In English, the negotiated plea bargain provided that, in exchange for the defendant’s guilty plea, the assistant district attorney handling the matter for the State would “recommend to the court that [the defendant] be sen *605 tenced to one year and a day in the penitentiary.” 56 Ala.App. at 705, 325 So.2d at 212. At the guilty plea proceeding, however, the assistant district attorney remained silent and did not apprise the court of that aspect of the plea bargain. Subsequently, after a presentence report had been prepared, a sentencing hearing was conducted; at the hearing the assistant district attorney answered in the negative when asked by the court if there were any recommendations from the State. Defense counsel interjected to advise the court that the State had committed to recommend a sentence of one year and a day; the assistant district attorney acknowledged as much but explained that he had been under the impression that the court was going to rule solely on the basis of the presentence report. The trial judge sentenced the defendant to seven years in the penitentiary and subsequently denied his motion either to reconsider the sentence or to allow him to withdraw his plea of guilty.
Thus, in both English and Santobello, the State had clearly reneged on a promise it had made to the defendant as a part of the plea bargain. Similarly, in Blow the trial judge accepted the guilty plea knowing that a feature of the plea was that the defendant was to receive a three-year sentence, but after the defendant failed to appear for his scheduled sentencing date, the trial judge sentenced him to five years. In each case, there was clearly a broken bargain, but, in explaining its holding in English, the Court of Criminal Appeals stated:
“Our holding today is not to be considered as binding the trial court to the agreement struck between the prosecutor and defense counsel. What we do hold is that if the trial court decides not to carry out the agreement reached between the prosecutor and counsel for the accused, the accused must be afforded the opportunity to withdraw his guilty plea on motion promptly made, as was done in this case.”
56 Ala.App. at 708, 325 So.2d at 215. This statement must be read in the context of the circumstances involved in that case — a clearly broken promise by the district attorney and the compounding of that broken promise by the trial court when, having been informed of the facts, it declined to allow the defendant to withdraw his guilty plea.
Unfortunately, the sense of the statement in English has been expanded in some subsequent court decisions to mean, at least in Brown v. State, supra, that a defendant who has pleaded guilty pursuant to a plea bargain in which the State commits that it will recommend probation, but as to which the trial court clearly informs the defendant that it will not be bound by the recommendation, is entitled to withdraw the guilty plea even though the recommendation is forthcoming, if the trial court declines to follow it and denies probation. That, of course, is the situation the trial court faced in this case, and one that I believe warrants this Court’s consideration.
There was no suggestion in Brown, and there is no suggestion in this case, that the State did otherwise than fully and in good faith honor its promise and recommend probation. Therefore, the “bargain” was kept, not broken. All that happened in Brown, and in this case, was that the trial court, having previously fully explained to the defendant that a recommendation for probation by the State would not be binding on the court, exercised its duty at the subsequent probation hearing to review all pertinent considerations, including the recommendation by the State, and decided that probation would not be appropriate *606 based on the sum total of those considerations.
In Holman, supra, the defendant Holman had negotiated a plea bargain with the deputy district attorney pursuant to which, in exchange for pleading guilty to selling drugs, Holman would receive a 15-year sentence, the sentence to run concurrently with another 15-year sentence he had received in another case, and a third case pending before the grand jury would be dismissed or nol-prossed. Holman was participating in a drug-rehabilitation program, and the court agreed to defer his sentencing from March 20 to June 15 in order that he “ ‘might complete his drug rehabilitation program and get his affairs in order before going to prison.’ ” 486 So.2d at 501. At the March 20 guilty-plea proceeding, after the trial court had been informed of the proposed terms of the plea bargain, it explained to Holman that, because sentencing was being deferred to June 15 at the request of Holman’s lawyer, if Holman timely appeared on that date, and had “not picked up any new cases,” he would “lock into a fifteen year minimum sentence on this case.” The trial judge went on to explain that, however, if Holman failed to appear on June 15 or if he got arrested again, “I reserve the option to sentence you up to life in the penitentiary.” Through a process of careful reexpla-nation to, and questioning of, Holman, the trial court confirmed Holman’s clear understanding that if he did not appear as scheduled on June 15 “[t]he 15 years will be off and I could give you up to life, right?” Holman failed to appear on June 15, and he was arrested by narcotics officers on June 28, along with other people present in an apartment where marijuana, some syringes, and firearms were discovered. When Holman subsequently appeared for sentencing in the case the plea bargain related to, the trial judge sentenced him to life imprisonment and later denied his motion to withdraw his guilty plea. Holman appealed to the Court of Criminal Appeals, and that court, relying on Blow and English, supra, concluded that the trial judge had refused to carry out the terms of the plea-bargain agreement. The Court of Appeals explained that “if the court decides not to accept the [plea] agreement, the accused must be informed of the court’s determination, and then afforded an opportunity to withdraw his guilty plea.” Holman v. State, 486 So.2d 497, 498-99 (Ala.Crim.App.1985). Accordingly, that court reversed the trial court’s judgment. This Court granted cer-tiorari review and subsequently reversed the judgment of the Court of Criminal Appeals, stating, among other things:
“Whether or not a defendant should be allowed to withdraw his guilty plea is a matter within the sound discretion of the trial judge. His refusal to allow such a request will not be disturbed except where an abuse of that discretion is demonstrated. Tiner v. State, 421 So.2d 1369 (Ala.Crim.App.1982) (citing Boykin v. State, 361 So.2d 1158 (Ala.Crim.App.1978).) The mere subjective beliefs or expectations of a defendant as to the length of sentence to be imposed, unsupported by any promise from the State or indications by the court, are insufficient and unavailing to set aside a guilty plea as unknowingly or involuntarily made. Tiner v. State, supra. The fact that a defendant who has knowingly and intelligently pleaded guilty later becomes dissatisfied with the sentence he received does not, alone, constitute a ground for invalidating the guilty plea. Chapman v. State, 412 So.2d 1276 (Ala.Crim.App.1982).
“Although it is undisputed that an agreement was reached between Holman’s counsel and the prosecutor, which provided for a recommendation of a sen *607 tence of 15 years in exchange for a guilty plea, it is apparent from the previously cited portion of the record that Holman’s guilty plea was made without objection to, and with full knowledge of, the added conditions set out by the trial judge. Because Blow v. State, [49 Ala.App. 623, 274 So.2d 652 (Ala.Crim.App.1973)], and English v. State, [56 Ala.App. 704, 325 So.2d 211 (Ala.Crim.App.1975)], are distinguishable from the instant case, the reliance of the Court of Criminal Appeals on those cases is misplaced. In Blow, the trial judge accepted a guilty plea based upon the district attorney’s recommendation that the judge sentence the defendant to three years. The sentencing hearing was continued, but the defendant failed to appear on the later date. The trial judge rejected the recommendation and sentenced the defendant to five years.
“In Blow, the Court of Criminal Appeals relied on the authority of Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), which held that when a prosecutor makes a promise which plays a significant part in the plea decision, the promise must be kept. In Blow, the court stated: ‘After advising the appellant that he could not take the recommended plea [the judge] should have afforded him an opportunity to withdraw it. Although the judge’s prior concurrence may have been conditional, the plea withdrawal was necessary to correct the ' broken bargain.’ 49 Ala.[App.] at 624, 274 So.2d at 652.
“In the present case, unlike in Blow, the plea agreement, as amended by the trial judge, specifically contemplated the defendant’s further violations; therefore, the trial judge sentenced Holman pursuant to the agreement. In Blow, upon the defendant’s failure to appear and his commission of further violations, the trial judge rejected the agreement, which did not specifically contemplate the defendant’s failure to appear or his further violations.
“Likewise, in English v. State, supra, the court held that ‘if the trial court decides not to carry out the agreement reached between the prosecutor and counsel for the accused, the accused must be afforded the opportunity to withdraw his guilty plea on motion promptly made.’ 56 Ala.App. at 708, 325 So.2d at 215. That case is distinguishable because the trial judge, in the present case, did not refuse to carry out the amended plea agreement. To the contrary, he sentenced Holman pursuant to it.
“The purpose of the rule allowing a defendant to withdraw a guilty plea when the trial judge refuses to carry out an agreement reached between the prosecutor (or the trial judge) and defense counsel is to insure that such a plea is made voluntarily, which necessarily requires that it be made with full knowledge of the attendant consequences.
• “We hold, under the facts in this case, that the trial judge did not abuse his discretion in denying Holman’s motion to withdraw his guilty plea. To hold otherwise would enable the defendant either to demand a lesser sentence that had been predicated upon a condition he failed to meet, or to withdraw a plea knowingly and voluntarily entered. This would set a dangerous precedent. Therefore, the judgment of the Court of Criminal Appeals is reversed and the cause remanded for entry of judgment consistent with this opinion.”
486 So.2d at 503-04.
In the present case, the Court of Criminal Appeals rejected the State’s argument that Holman should apply to sustain the *608 trial court’s judgment, distinguishing Holman as follows:
“Although the trial court advised Nelson during the guilty-plea proceeding that it was not bound by the State’s recommendation of probation, it did not add any additional conditions to the plea agreement as the trial court did in Holman.
“Thus, the present case is not a situation like Holman, where the trial court sentenced the defendant ‘in accordance with the plea agreement, as amended by the condition added by the trial court.’ Taylor [v. State], 677 So.2d [1284] at 1285 [(Ala.Crim.App.1996)]. Instead, the present case is a situation, like Taylor and Brown [v. State, 495 So.2d 729 (Ala.Crim.App.1986)], where the trial court did not abide by the terms of the plea agreement.”
866 So.2d at 598.
I frankly think that the distinction thus drawn is more one of semantics than of substance. The concern in this type of case should be not with the process by which the terms of the plea bargain are finally structured, but with the issue of what in fact were the final terms of that plea bargain and whether those terms were clearly and explicitly communicated to the defendant, fully understood by him, and voluntarily and knowingly accepted by him. Nonetheless, in fashioning its “conflict” ground in this case, the State has planted its flag on the specific proposition that “the question here is whether the trial court and Nelson modified the original plea agreement during the colloquy.” The State then argues that “[s]uch a modification did occur, and the Court of Criminal Appeals erred by failing to follow this Court’s precedent of Holman.”
I believe that the Court of Criminal Appeals’ opinion in this case conflicts with Holman on a much broader basis, but I recognize that this Court must respond to the State’s “conflict ground” as it is phrased. Having chosen to rely on that narrow interpretation of the holding in Holman, the State effectively explains why that holding would apply to this case, so as to expose the decision by the Court of Criminal Appeals to the contrary as being in conflict:
“In the Holman case, there was a plea agreement, but this Court noted that the trial court effectively amended that agreement and did not breach the amended agreement, such is the case here. The record reflects that Nelson’s initial subjective belief during the colloquy was that he would be granted probation. (R. 8.) The trial court specifically explained to him that his guilty plea would not be conditioned on the grant of probation, but that the trial court would consider Nelson’s application, along with the State’s recommendation, at the proper time. The record reflects that Nelson’s belief that the prosecutor had promised him probation was effectively amended by the trial judge’s specific instructions to the contrary. Here, as in Holman, there was a meeting of the minds between the defendant and the trial judge concerning the ultimate plea bargain agreement. Nelson indicated to the trial judge that he understood he was not guaranteed probation. With that understanding, Nelson informed the trial judge that he wanted to plead guilty anyway. Nelson had full knowledge of the attendant consequences of his guilty plea. He chose to plead guilty anyway.”
I agree that this analysis of the circumstances involved in the final determination of the terms of the plea bargain shows the facts of this case to be sufficiently aligned with those of Holman as to warrant issuance of the writ to consider whether the trial court exceeded its discretion in refus *609 ing to allow Nelson to withdraw his guilty plea. I find merit in the State’s argument that the trial court modified the original plea agreement, at least as Nelson apparently had believed it to be, by imposing the condition that probation would be granted, or not granted, based on what the trial judge ultimately determined was appropriate, independent of the fact that the State was going to (and did) recommend probation.
Accordingly, I would grant the petition.
BROWN and STUART, JJ., concur.

. Pursuant to Rule 39(g), this Court’s issuance of the writ of certiorari does not indicate any definitive disposition on the merits; rather the writ simply requires the clerk of the appropriate court of appeals, in this case the Court of Criminal Appeals, to transmit the full record in the case to the clerk of this Court, and allows the respondent to file a brief, the petitioner to file a brief in response to the respondent’s brief, and the respondent to file a subsequent reply brief.

. "A trial judge may permit a defendant to withdraw a plea of guilty to enter one of not guilty up to thirty days after judgment on the plea of guilty.” Boykin v. State, 361 So.2d 1158, 1160 (Ala.Crim.App.1978).

. The materials before us do not discuss what took place at that probation hearing, other than the fact that the request for probation was denied.

.It is interesting to note that Brown, decided September 9, 1986, takes no note whatsoever of Holman, which this Court had decided on January 11, 1986.