Following convictions for driving under the influence and disorderly conduct in the Huntsville Municipal Court, Lawrence Swann appealed to the Madison Circuit Court. After a jury trial, he was convicted of both charges and sentenced: for DUI, to six months' imprisonment with three months suspended, and ordered to make restitution to the victim in the amount of $719; and for disorderly conduct to five days' imprisonment.
Evidence for the City showed that on the afternoon of May 1, 1982, Swann was driving a pickup truck in Huntsville when he was observed weaving in and out of traffic and veering off the road. Mr. Richard Lindsey testified that he saw Swann's truck strike a Volkswagen stopped in a turn lane. Ms. Alice Terry, the driver of the Volkswagen, testified that after the collision she and Swann got out of their vehicles and were exchanging information when Swann stated, "Since there are no injuries I'm going on; I've already given my driver's license, my name and address."
Mr. Lindsey, who had also stopped at the scene, blocked Swann's truck to prevent him from leaving until the police arrived. He noticed some slurring of Swann's speech and stated that, in his opinion, Swann was intoxicated. Ms. Terry also *Page 946 
gave her opinion that the defendant was intoxicated. Both Mr. Lindsey and Ms. Terry testified that, once the Huntsville police officer arrived on the scene and began questioning witnesses, the defendant became loud and belligerent, continually interrupting the investigating officer.
Officer Thomas Green of the Huntsville Police Department, who investigated the accident, testified that he noticed the odor of "something" on Swann's breath but was not sure it was alcohol. When he asked Swann if he had been drinking, Swann "started to get loud" and began "ranting and raving up and down in front of me." According to Green, Swann became very agitated and uncooperative, interrupting the officer and shouting, "This is some shit. . . . Damn you; you're just doing this because I'm black. You're bringing us back a hundred years." Green testified that he found a plastic bottle containing a strong-smelling yellowish liquid in Swann's truck but was not sure whether it was alcohol.
Officer Tommy McCulley testified that he was qualified to operate the Breathalyzer 1000 machine and that he did so in accordance with the rules and regulations promulgated by the Board of Health. He stated that he administered a breath test to Swann at 4:00 P.M. on May 1, 1982, and received a reading of .09 percent alcohol.
Swann testified in his own behalf and maintained that he had not been drinking while or before driving. He stated that he had a drink after the collision and before the police arrived on the scene. He maintained that the veering of his truck was due to an engine problem, and he called a mechanic, who had ridden in the vehicle the day before the collision, to testify that the truck was not operating properly. He also put on the testimony of a witness who said he saw Swann take a drink at the scene after the accident.
Swann claimed that he was not belligerent or disorderly to the investigating officer, but was reacting to the officer's having addressed him, a black man, as "boy".
 I
Swann argues that the court improperly refused to accept his guilty plea and then penalized him for exercising his right to trial by jury. The facts pertinent to this issue indicate that prior to trial, Swann, his attorney, and the City Attorney had discussed settling the case on a guilty plea and recommended sentence. The plea negotiations never resulted in an agreement. Nevertheless, Swann's attorney, relying on his expectation of a settlement, did not subpoena witnesses or prepare the case to be tried. When the case was called for trial on December 7, 1982, defense counsel informed the court that he was not ready. Swann, who had earlier requested to act as his own co-counsel, then moved for a continuance, which the trial court denied. At that point, Swann told the court he felt he was having a heart attack and needed to see a doctor.
After ascertaining that Swann had no prior history of heart trouble and appeared to be healthy, the judge told Swann that he believed him to be feigning a heart attack and if a physical examination revealed no illness Swann would be held in contempt. Swann then conceded that he felt "just . . . real sick and nervous." Following a brief recess during which defense counsel informed the court that his client wished to plead guilty, the court began to question Swann regarding his plea:
 "THE COURT: All right. Mr. Swann your attorney has indicated to me that you wish to enter a plea of guilty to the charge of driving under the influence of alcohol; is that correct or incorrect?
 "THE WITNESS: I say, but with reluctance, sir, yes, sir."
. . . .
 "THE COURT: What I want you to understand, Mr. Swann, is that this Court is as much to vindicate as it is to condemn; that it is for the purpose of giving you a trial, which you have demanded, or taking your plea, which you have indicated you wish to enter. And I don't have a preference. I really don't. And I want you to understand that whatever you do *Page 947 
should be because of your choice and not because of this Court's choice; do you understand that?
 "THE WITNESS: I understand that, Your Honor, and I can appreciate it. But if I had been allowed to have some witnesses here, then — you know, I don't stand a chance of doing anything but lose now anyway, so I accept it."
. . . .
 "(THE COURT): Do you admit or deny the allegations of that complaint?
"THE WITNESS: I admit it, sir.
 "THE COURT: And is that because you are, in fact, guilty, or is there some other reason?
 "THE WITNESS: I say the correct thing to say, sir, is because I'm guilty. That's what the correct thing to say is."
. . . .
 "THE COURT: Do you understand that you have the right to a trial by jury?
 "THE WITNESS: Yes, sir. Your Honor, can I make a statement that's not unbiased?
"THE COURT: Yes, sir.
 "THE WITNESS: Would accept it as not being, please, sir?
"THE COURT: Yes, sir.
 "THE WITNESS: I understand that I have the right to a trial by jury, but I also thought I had a chance to have witnesses here if I had some, and —
 "THE COURT: Who were your witnesses, that you wanted to call?
 "THE WITNESS: Oh, I had Sam Patton, and I had the lady that I had the wreck with — several people. I plead guilty, sir, yes, I plead guilty.
 "THE COURT: Sir, is that because you were driving under the influence of alcohol, or is there some other reason?
 "THE WITNESS: I plead guilty. I drank the whiskey at the scene, and there were some people there that saw me. I plead guilty to it. That's my only way out.
 "THE COURT: Have a seat over here, Mr. Swann (indicating). I'll note your plea of not guilty.
"THE WITNESS: I plead guilty, sir.
 "THE COURT: Mr. Swann, when you tell me, `That's my only way out', then —
"THE WITNESS: Sir, I don't have any witnesses here.
 "THE COURT: I understand what your position is with regard to your witnesses.
"THE WITNESS: I plead guilty, sir.
 "THE COURT: You are indicating to me that you are not pleading guilty because of your guilt but because you don't have your witnesses subpoenaed here.
 "THE WITNESS: I plead guilty, sir, without anything being said. I don't know no other way to do it, sir."
. . . .
 "THE COURT: Do you understand that you have the right to compel witnesses to attend in your behalf; do you understand that?
 "THE WITNESS: I understand that, but I was not allowed that right, sir.
"THE COURT: Did anyone prevent that right?
"THE WITNESS: I didn't know about it, sir.
"THE COURT: Well, we've been through that before.
"THE WITNESS: Yes, sir.
 "THE COURT: And you understand the case has been set for trial for a substantial number of days, and that there's nothing that precluded you from compelling witnesses to attend in your behalf; do you understand that?
 "THE WITNESS: I understand that, sir. Only I didn't know it."
. . . .
 "THE COURT: Do you understand that you should not plead guilty because anyone has threatened you or coerced you or intimidated you or offered you a reward or leniency to plead guilty?
"THE WITNESS: Yes, sir.
"THE COURT: Has any of this occurred?
"THE WITNESS: (No response.)
 "THE COURT: Is there a question in your mind that some of this has occurred, *Page 948 
Mr. Swann? If so, state that for me.
"THE WITNESS: No, sir.
 "(At this point, witness begins sobbing uncontrollably.)"
"There is, of course, no absolute right to have a guilty plea accepted." Santobello v. New York, 404 U.S. 257, 262,92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). See James v. State,380 So.2d 995, 998 (Ala.Cr.App. 1979), cert. denied, 380 So.2d 999 (Ala. 1980); Pelmer v. State, 389 So.2d 584, 590 (Ala.Cr.App. 1980). From the foregoing exchange, it is evident that the trial court was well within its discretion in concluding that Swann was not freely and voluntarily admitting his guilt, and therefore declining to accept his plea.
 II
Swann contends that the City did not live up to its plea bargain agreement with him. We note, first, that the record contains absolutely no evidence of an agreement. In fact, it indicates just the contrary, that the parties were unable to reach an understanding. Moreover, even if the parties had arrived at a plea bargain, the trial judge would not have been compelled to accept a guilty plea thereunder. See English v.State, 56 Ala. App. 704, 708, 325 So.2d 211, 215 (1975), cert. denied, 295 Ala. 401, 325 So.2d 216 (1976).
 III
Swann complains that the court refused to compel the attendance of three of his witnesses who did not appear on the date set for trial. The record reveals that Swann did not request subpoenas for these witnesses until the Friday preceding his Wednesday trial date. The subpoenas were served on Monday and the City Attorney informed the court that the witnesses, all police officers, would "be here". Swann should have requested that the court issue attachments for the witnesses. Under these circumstances, there was no adverse ruling on which to predicate Swann's argument on appeal.
 IV
The trial judge determined that Swann was gainfully employed and was not indigent. Swann was not, therefore, entitled to court-appointed trial counsel. See Alabama Code Section15-12-21 (1975). The fact that he had not secured other counsel after his retained attorney was allowed to withdraw two months earlier did not authorize the court to provide him with an attorney at State expense. Swann was not denied due process by the withdrawal of his first counsel, and two months was adequate time in which to employ substitute counsel. See generally Annot., 73 A.L.R.3d 725 (1976).
 V
Swann complains that the City failed to provide him with information concerning the Breathalyzer test, as required by Alabama Code Section 32-5A-194 (a)(4) (1975). That section states:
 "Upon the written request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney."
In contrast to the analogous section of the Uniform Vehicle Code from which this section was derived, Section 32-5A-194
(a)(4) requires a written request for chemical test information. Cf. U.V.C. Section 11-902.1 (Supp. 1972). Swann made written requests for test information, if they can be so construed, via the directions appended to his requested subpoenas duces tecum:
Subject of Subpoena Additional Instructions
Lt. Kennemer "Bring records from Lawrence Swann's GCI tests on 5/1/82."
Lt. Wilburn "Bring records from Lawrence Swann's Breath Test on 5/1/82."
In addition, the record contains the following note, also apparently attached to Swann's subpoena requests:
"Dear Mr. Miller (City Attorney): *Page 949 
 I am requesting all the information or full information concerning the attempted tests and test given to me on 5/1/83 by the mobile unit. I need this information before trial time. Is this mobile unit still at the factory being repaired?
 L. Swann 837-1572 — Home 1710 Jordan Lane Huntsville, Ala. 35805 1/27/83"
Although Swann dates his breath test May 1, 1983, it is apparent that this is a mistake, and he intended it to be May 1, 1982.
There is no indication in the record that Mr. Miller, the City Attorney, ever received the note, and there is every reason to believe that he was not aware of it, since the writing was included with subpoena requests for witnesses filed in the Circuit Clerk's Office and Mr. Miller was not a subpoenaed witness. In any case, neither party to this appeal has moved to supplement the record in order to clarify this issue.
Furthermore, it appears that Swann waived receipt of the information when he failed to pursue the matter at trial. During the City's case in chief, Officer McCulley testified that the Breathalyzer machine produced a printout. When Swann requested to see the printout, the following occurred:
"THE COURT: Is that printout available to you?
 "THE WITNESS: Yes, sir. To my knowledge, it would be, yes, sir.
"THE COURT: How long would it take to get it?
 "THE WITNESS: I could make a call and find out. Offhand, I don't know.
 "THE COURT: All right. We'll continue with your examination, but see if you can get it at lunch.
"MR. MILLER (Attorney for City): Okay.
"THE COURT: Examine your witness, Mr. Swann.
"MR. SWANN: Okay."
The transcript contains no further reference to the printout and no further request by Swann for information. For aught that appears, Officer McCulley may have produced the material at lunch as the court instructed him. From the record before us, we cannot say that Swann made a proper request for the material, or, having made it, was denied the information he sought.
 VI
The denial, in part, of Swann's application for probation was entirely within the discretion of the trial judge and is not reviewable on appeal from the judgment of conviction. Howard v.State, 420 So.2d 828 (Ala.Cr.App. 1982); Turner v. State,365 So.2d 335 (Ala.Cr.App.), cert. denied, 365 So.2d 336 (Ala. 1978).
 VII
Swann challenged the sufficiency of the City's evidence against him by means of a motion for "Direct Verdict of Not Guilty", which we construe to be a motion for judgment of acquittal pursuant to Rule 12, A.R.Crim.P.Temp. He contends that the evidence did not support a finding that he was either intoxicated or disorderly.
In our judgment, the evidence fully warranted the guilty verdict on the charge of DUI, but was insufficient to support a verdict of disorderly conduct. We therefore affirm the judgment pertaining to the DUI charge, but reverse and render the judgment as to the disorderly conduct charge.
Swann is correct that .09 percent alcohol in the blood does not constitute legal intoxication per se. Section 32-5A-194
(b)(2) provides:
 "If there were at that time in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol." (Emphasis added.) *Page 950 
When considered with the testimony of Mr. Lindsey and Ms. Terry that Swann drove erratically and dangerously, slurred his speech, and was intoxicated, as well as the testimony of Officer Green that Swann began "ranting and raving" upon being asked whether he had been drinking, and had in his truck a flask with a substance resembling whiskey, the jury was authorized to find that Swann's blood alcohol level was indicative of his being under the influence of alcohol.
Swann's conviction of disorderly conduct, however, cannot stand. Section 13A-11-7, Code of Alabama 1975, which has been adopted by the City of Huntsville, provides the following:
 "(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
 "(1) Engages in fighting or in violent tumultuous or threatening behavior; or
(2) Makes unreasonable noise; or
 (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
 (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
 (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
 (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.
"(b) Disorderly conduct is a Class C misdemeanor."
Subsections (2) ("unreasonable noise") and (3) ("abusive or obscene language") are the only provisions arguably relevant here. Although the City's evidence proved defendant was "loud", there was no testimony regarding whether the noise was unreasonable under the circumstances. Defendant's conduct was therefore not shown to be in violation of subsection (2).
Subsection (3) has been interpreted narrowly to apply only to "fighting words". Mosley v. City of Auburn, 428 So.2d 165
(Ala.Cr.App. 1982). This Court has defined "fighting words", in light of the United States Supreme Court decisions inChaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766,86 L.Ed. 1031 (1942), and Gooding v. Wilson, 405 U.S. 518,92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), as follows:
 "(T)hey are those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace."
Skelton v. City of Birmingham, 342 So.2d 933, 936-37
(Ala.Cr.App.), remanded, 342 So.2d 937 (Ala. 1976).
The words found to be fighting words in Mosley, supra, were "Go ahead and hit me so I can kill your M_____ F_____ honky ass." 428 So.2d at 166. The language deemed not to constitute fighting words when addressed to a police officer in Skelton
was, "Are you big shits going to move or am I going to have to go around." 342 So.2d at 934. In our judgment, defendant's comment here, "This is some shit. . . . Damn you; you're just doing this because I'm black. You're bringing us back a hundred years", did not contain a threat and did not have the likelihood of causing a violent response by the police officer to whom they were addressed. As we observed in Skelton, construing a similar Code provision:
 "(T)he statute requires that the words be calculated to cause an immediate breach of the peace. It is not enough . . . they merely arouse anger or resentment."
342 So.2d at 937 (emphasis added).
While Swann's language may have aroused the anger and resentment of Officer Green, we do not believe that it was calculated to provoke physical retaliation, especially in view of the probable training received by the officer in dealing with similar situations. See generally Annot., *Page 951 
14 A.L.R.4th 1252 (1982). The conviction for disorderly conduct is therefore reversed and rendered.
AFFIRMED IN PART;
REVERSED AND RENDERED IN PART.
All Judges concur.