James Ira Mason was convicted in Vestavia Hills Municipal Court of indecent exposure, sentenced to 180 days in jail, and fined $500. He appealed to Jefferson Circuit Court for trial de novo, where he was again convicted and given the same sentence. He raises three issues on appeal to this court.
 I
The crime of indecent exposure is defined in § 13A-6-68, Code of Alabama 1975, as follows:
 "A person commits the crime of indecent exposure if, with intent to arouse or gratify sexual desire of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm in any public place or on the private premises of another or so near thereto as to be seen from such private premises."
The complaint filed in municipal court alleged that the defendant committed the crime of indecent exposure "in that he,with intent to gratify sexual desire of himself, did so by exposing his genitals to Martha Sue Sanford, on a public street." Upon the defendant's appeal to circuit court, the City charged that the defendant committed the prohibited act "with the intent to arouse or gratify the sexual desire of himself orof another person other than his spouse. . . ." The defendant contends that the addition of the words "or of another person other than his spouse" constituted an amendment of the charge, without his consent, prohibited by Rule 15.5(a), A.R.Crim.P.Temp., and Ex parte Wallace, 497 So.2d 96 (Ala. 1986). We agree. The error was harmless, however, because the defendant was not misled in formulating his defense strategy, and the City offered proof of both disjunctive averments of intent.
The City's evidence tended to show that the defendant, driving a Saab, followed the complainant, Martha Sue Sanford, driving a Cadillac, through the Tanglewood area of Vestavia Hills. When Mrs. Sanford stopped at an intersection, the defendant pulled his vehicle alongside hers into the lane of oncoming traffic. When she turned, he turned. Finally, she came to a four-way stop and the defendant pulled "very close" beside her. As Mrs. Sanford turned to look at the defendant, she saw that his genitals were exposed and he was masturbating. Mrs. Sanford testified that the defendant was "leaning forward and grinning" at her. "It was evil. He was grinning." The State also proved Mrs. Sanford was not married to the defendant. Under the circumstances, the jury could have found that the defendant's intent was to gratify his own sexual desire or to arouse the sexual desire of the complainant, or both.
The law regarding amendment of a charging instrument has been characterized by inconsistency, confusion, and often injustice. Compare Blankenshire v. State, 70 Ala. 10 (1881) (amendment to solicitor's complaint allowed even though original affidavit did not charge an offense), with Miles v. State, 94 Ala. 106,11 So. 403 (1892) (amendment of solicitor's complaint improper because original affidavit did not charge an offense). See generally, Ex parte City of Dothan, 501 So.2d 1136, 1157-73
(Ala. 1986) (Beatty, J., dissenting); Ex parte Allred,393 So.2d 1030, 1033 (Ala. 1980) (Maddox, J., concurring specially); Edwards v. State, 480 So.2d 1259 (Ala.Cr.App.), cert. denied, Ex parte Edwards, 480 So.2d 1264 (Ala. 1985);Sisson v. State, [Ms. 6 Div. 161, June 9, 1987] (Ala.Cr.App. 1987).
Prior to the adoption of Rule 15.5, A.R.Crim.P.Temp., an indictment could not be amended, even as to an immaterial matter, without the consent of the defendant. See Ex parteAllred, supra; Gregory v. State, 46 Ala. 151 (1871); Ala. Code 1975, § 15-8-90; Rule 15.5, A.R.Crim.P.Temp. (Comment at 460). On the other hand, a complaint originating in city court could
be amended, Thomas v. State ex rel. Stepney, 58 Ala. 365
(1877), as long as the original complaint was not absolutely void, Freeland v. State, 26 Ala. App. 74, 75, 153 So. 294
(1934); Royals v. State, 31 Ala. App. 367, *Page 223 
368, 18 So.2d 417, cert. denied, 245 Ala. 677,18 So.2d 418 (1944), and as long as the amendment did not introduce a new or different offense from that described in the affidavit,Mosley v. City of Auburn, 428 So.2d 165, 167 (Ala.Cr.App. 1982); Gober v. City of Birmingham, 41 Ala. App. 313,133 So.2d 697, cert. denied, 272 Ala. 704, 133 So.2d 702 (1961), reversed on other grounds, 373 U.S. 374, 83 S.Ct. 1311, 10 L.Ed.2d 419
(1963).
The free amendability of complaints, as distinguished from indictments, was due to the fact that proceedings based on complaints for violations of municipal ordinances were considered to be only quasicriminal, see McKinstry v. City ofTuscaloosa, 172 Ala. 344, 54 So. 629 (1910), Howard v. City ofBessemer, 40 Ala. App. 317, 320, 114 So.2d 158, cert. dismissed,269 Ala. 474, 114 So.2d 164 (1959), and, as such, were governed by Tit. 7, § 238, Code of Alabama 1940 (Recomp. 1958), which provided that "the court must permit an amendment of the pleadings. . . ." (Emphasis added.) In Gober v. City ofBirmingham, supra, the court observed that Tit. 7, § 238, was "broad and comprehends all pleadings except indictments, and authorizes amendment of complaints in prosecutions for violation of city ordinances, as though it were a complaint in a civil action." 41 Ala. App. at 316, 133 So.2d 697.
Title 7, § 238, however, was superseded on July 3, 1973, by Rule 15 of the Alabama Rules of Civil Procedure, see
A.R.Civ.P., Appendix II at 265, and was not recodified at the time the 1975 Code of Alabama was enacted for possible application in quasicriminal proceedings. We decline to speculate on the law regarding the amendability of complaints from July 3, 1973 (when Tit. 7, § 238, was superseded) until March 1, 1983 (when Rule 15.5, A.R.Crim.P.Temp., became effective), but compare Jackson v. City of Muscle Shoals,52 Ala. App. 227, 291 So.2d 162 (1974) (holding that an "amended" complaint was improper because the initial proceeding had been "void ab initio"), with Rule 15(d), A.R.Civ.P. (amendment may be allowed "even though the original pleading is defective in its statement of a claim"), and Committee Comments at 64-65.
We hold that the amendability of complaints has been governed, since March 1, 1983, by Rule 15.5, A.R.Crim.P.Temp., which provides, in pertinent part:
 "A charge may be amended by order of the court with the consent of the defendant in all cases except to change the offense or to charge new offenses not included in the original indictment, information, or complaint."
The rule, by its plain language, applies to all "charges." A complaint is a "charge." Rule 15.1(c), A.R.Crim.P.Temp. The rule, therefore, makes complaints, like indictments, absolutely non-amendable without the consent of the defendant. Ex parteWallace, 497 So.2d at 99.
In Dunn v. City of Montgomery, 515 So.2d 135 (Ala.Cr.App. 1987), released the same date as this case, this court held:
 "The amendment of the complaint was improper. Rule 15.5(a), Alabama Rules of Criminal Procedure (Temporary), provides: 'A charge may be amended by order of the court with the consent of the defendant in all cases except to change the offense or to charge new offenses not included in the original indictment, information, or complaint.' This means that (1) a charge may only be amended with the defendant's consent and (2) a charge may not be amended where the amendment changes the offense or charges a new offense not included in the original charge. Ex parte Wallace, 497 So.2d 96 (Ala. 1986); Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala.Cr.App. 1987)."
The holding in Sisson v. State, supra, and post-1983 cases cited therein that a complaint may be amended if it does not "change the offense" or "charge new offenses" is contrary to the clear directive of Rule 15.5, and is therefore limited to the extent that it conflicts with the rule.
In the present case, the addition of the words "or of another person other than his spouse" constituted an amendment prohibited by Rule 15.5. The fact that the *Page 224 
amendment was in violation of the rule does not, however, mandate automatic reversal. Rule 45, A.R.A.P., provides:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties." (Emphasis added.)
The defendant here was not harmed by the amendment. Because his defense was an absolute denial of the charges, he was not misled to his detriment by the addition of an alternative intent allegation contained in § 13A-6-68. Similarly, because the State's evidence proved both allegations, there was no variance between the charge and the proof, as existed in Exparte Hightower, 443 So.2d 1272 (Ala. 1983).
Although the Alabama Supreme Court has not determined whether a violation of Rule 15.5 is subject to the harmless error rule, this court so held in Edwards v. State, 480 So.2d at 1264. To refuse to apply harmless error analysis to a violation of Rule 15.5 is to elevate form over substance. We note that the predecessor to Rule 15.5, Proposed Rule 13.5, A.R.Crim.P. (A.L.I. Advisory Committee Draft 1977), provided, "The court may permit a charge to be amended, without the defendant's consent, at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." See also Ex parte Allred, 393 So.2d at 1033 (Maddox, J., concurring specially); Edwards, 480 So.2d at 1261.
 II
The defendant claims that the City Attorney improperly commented on his failure to testify during the following closing argument to the jury:
 "MR. PEARS [City Attorney]: Ladies and Gentlemen, have any of us heard today that Mr. Mason wasn't driving a Saab during the incident?
 "MR. GOMANY [Defense Counsel]: We object and have a motion. We object and have a motion. I know from the past what needs to be done, Judge. I guess we all ought to come over here.
"(Side bar conference.)
 "MR. GOMANY: There's no way you can interpret that — we have no witness with him at that time. That's a direct comment on his failure to testify, Judge. We move for a mistrial. That's so blatant.
 "THE COURT: Hold it. Go back and read what he said.
"(Requested portion of record read.)
 "MR. GOMANY: That's right. If that isn't a failure on his comment to testify [sic], I don't know what is.
 "THE COURT: He asked every one of these witnesses that you put on, 3 of them — no, 2 of them. He asked Slick, and he didn't know. He asked the girlfriend and the bride-to-be did she know what he was driving. He asked each of those. I don't think he asked his cousin. He asked 2 of the witnesses that very question.
 "MR. GOMANY: I think that's a direct comment on his failure not to testify.
"THE COURT: I overrule you.
"MR. GOMANY: We except, Judge.
 "(Whereupon, Mr. Pears continued to address the jury in final argument, during which the following proceedings were had and done:)
 "MR. PEARS: Ladies and Gentlemen, I'm going to ask you again, did you hear any testimony from this stand today that Ms. Sanford didn't see a Saab on the day in question or that Mr. Mason wasn't driving a Saab during noon on August 12, 1986.
 "MR. GOMANY: I object, Judge, and renew the motion.
"THE COURT: I understand. I overrule it." *Page 225 
The fact that the defense put on no proof that the defendant "wasn't driving a Saab" was not a failure to present a defense. The defendant attempted to exonerate himself in another way. He admitted that he was driving a Saab. However, he contended that the vehicle was a distinctive, special option Saab which did not match the complainant's description of the Saab she observed.
At trial, Mrs. Sanford's description of the vehicle which followed her and whose occupant exposed himself to her was unequivocal: a black Saab with the "Saab" insignia on the passenger side of the body. The defendant's theory at trial was one of mistaken identity. Although the defendant himself did not take the stand, he presented three witnesses to testify that the vehicle described by Mrs. Sanford was not the one he was driving on the day in question. The defendant's employer testified that on the day of the offense the defendant was last seen driving an Edwardian gray Saab SPG. Defense evidence established that the Saab SPG was designated "special performance group" and differed from other Saabs in that, among other things, it did not come in black and it had no insignia on the side of the vehicle.
In view of the foregoing defense, there was no possibility that the jury could have understood the city attorney's remark to be a comment on the failure of the defendant to testify.See Ex parte Ward, 497 So.2d 575, 576 (Ala. 1986) (citingBeecher v. State, 294 Ala. 674, 682, 320 So.2d 727, 734
(1975)). Because the defendant did not have to deny driving a Saab in order to present an adequate defense, the jury was unlikely to draw any adverse inferences about the defendant's failure to testify from the city attorney's remarks. Because the defense relied on a trial strategy other than denial that he was driving a Saab, the jury was also unlikely to have interpreted the prosecutor's argument as a comment on the "failure of the defendant to produce other exculpatory evidence." Compare Ex parte Wilhite, 485 So.2d 787, 788 (Ala. 1986) (comment that if drugs ingested by defendant had been prescribed medication the defendant "would have shown it" merely "expose[d] the failure of the defendant to produce other exculpatory evidence," and was not a comment on failure to testify) with Ex parte Williams, 461 So.2d 852, 854 (Ala. 1984) (statement that "there's no testimony [defendant] was coerced into making a statement about something he didn't do" was a prohibited comment on failure to testify because defendant was the only one who could reasonably be expected to rebut State's evidence that his confession was not coerced).
In short, the prosecutor's statement here was neither a reference to the defendant's failure to take the stand himself nor to his non-production of exculpatory evidence through the testimony of other witnesses. The remark was most likely a prelude to further argument that, although the Saab the defendant claimed to have been driving did not correspond to the Saab allegedly seen by the complainant, the differences between the two vehicles were so minor that the defense had not undermined the credibility of Mrs. Sanford's testimony. The trial court did not err in overruling the defense objections to the city attorney's argument.
 III
The defendant argues that the City's failure to provide him with photographs of the car in which he was arrested constituted a suppression of exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). The photographs, admitted as Defendant's Exhibits 1 and 2 at the hearing on motion for new trial, depict the driver's side and front of a gray or black Saab with no insignia on the side. At the hearing on motion for new trial the defense also presented the testimony of Mr. Frank Owen, a sales manager at the local Saab dealership. Owen stated that defense exhibits 1 and 2 portrayed a Saab SPG. He testified that he could distinguish the SPG from other Saabs because the SPG had no "Saab" insignia on either side of the vehicle. He also stated that the vehicle pictured in the two exhibits was gray; he acknowledged, however, that because the *Page 226 
paint was metallic, the color might appear to be different depending upon the light in which the car was seen.
"In order to establish a Brady violation, [the defendant] must demonstrate (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to him or exculpatory; and (3) that the evidence was material." Ex parte Kennedy,472 So.2d 1106, 1110 (Ala.), cert. denied, Kennedy v. Alabama,474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
Although the first two prongs of the Brady test are satisfied in this case, the third is not. In United States v. Bagley,473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court held that "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."473 U.S. at 682, 105 S.Ct. at 3384.
 "[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." United States v. Agurs, 427 U.S. 97, 112-13, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976).
The photographs were favorable to the defense. "While [they do] not by any means establish his absence from the scene of the crime, [they do] demonstrate that a number of factors whichcould link the defendant to the crime do not." Patler v.Slayton, 503 F.2d 472, 479 (4th Cir. 1974) (emphasis in original). Nevertheless, their suppression does not "undermine confidence in the outcome of the trial," Bagley,473 U.S. at 678, 105 S.Ct. at 3381, because there is no reasonable probability that, had they been disclosed to the defense, they would have "ma[d]e the difference between conviction and acquittal." Id., 473 U.S. at 676, 105 S.Ct. at 3380.
Shortly after Vestavia Hills police were notified to be on the lookout for a young white male in a black Saab, Officer Jack London spotted the defendant two and one-half miles away from the scene of the reported offense, stopped him for questioning, and detained him until another officer arrived with Mrs. Sanford. Within minutes of Mrs. Sanford's call to the Vestavia Hills police department to report the act of exposure, "an officer was on his way to [her] house" with information that "they had picked up someone." Mrs. Sanford was taken to the location where the defendant had been apprehended, and she identified him immediately. While being transported to Vestavia Hills City Hall, the defendant, upon being informed that he was suspected of "exposing himself to a woman in the Tanglewood area," said, "You mean the old lady in the Cadillac?"
In view of the defendant's almost immediate apprehension in the vicinity, the complainant's instant positive identification, and the defendant's inculpatory statement to Officer London, there is no reasonable probability that if the photographs had been admitted in evidence, the jury would have acquitted the defendant.
The snapshots corroborated the defense theory of the case because they depicted an arguably gray Saab with no side markings. Even the defense witnesses, however, conceded that the metallic color "Edwardian gray" could be viewed as black under certain lighting conditions. The complainant, the arresting officer, and the trial judge (outside the presence of the jury) all stated that the vehicle appeared to be black. The fact that the vehicle may have looked gray in the photographs is not, therefore, of such overwhelming probative force that it casts doubt upon the jury's verdict.
Even the absence of the "Saab" insignia on the side of the photographed vehicle is not sufficient to "undermine confidence in the outcome" of defendant's trial. Mrs. Sanford testified that she saw the insignia on the passenger side of the defendant's vehicle, whereas the photographs depict only thedriver's side of the car. Thus, the photographs do not totally exculpate the defendant; they merely call into question the accuracy of Mrs. Sanford's observation. *Page 227 
Given her positive identification of the defendant immediately after the occurrence, and the defendant's own incriminating statement to Officer London, any discrepancy regarding the location of the "Saab" insignia is not devastating to the State's case. Evaluating non-disclosure of the photographs "in the context of the entire record," Agurs, 427 U.S. at 112-13,96 S.Ct. at 2402, "the remaining evidence . . . was so great as to preclude any reasonable doubt about the defendant's guilt."State v. Miller, 144 N.J. Super. 91, 97, 364 A.2d 581, 584
(1976), aff'd, 169 N.J. Super. 423, 404 A.2d 1255 (1979). Seealso United States v. Corr, 434 F. Supp. 408, 414-15 (S.D.N Y 1977).
In addition, the non-disclosure of the pictures did not make the defendant's trial fundamentally unfair in the sense that it caused defense counsel to forgo trial tactics which he might otherwise have used. Compare United States v. Bagley,473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), on remand sub nom.Bagley v. Lumpkin, 798 F.2d 1297, 1301 (9th Cir. 1986) (knowledge of the undisclosed evidence "could have given Bagley an entirely different trial strategy that might have resulted in his acquittal"). The undisclosed evidence here dovetailed with the defendant's trial strategy, but it was not strong enough to render the guilty verdict of dubious validity. As the Supreme Court observed in Bagley, "Consistent with our overriding concern with the justice of the finding of guilt,United States v. Agurs, 427 U.S. at 112, 96 S.Ct., at 2401, a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." 473 U.S. at 678, 105 S.Ct. at 3381.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.