579 So.2d 696 (1991)
Juanita SHINAULT
v.
CITY OF HUNTSVILLE.
CR 90-88.
Court of Criminal Appeals of Alabama.
April 11, 1991.
*697 Joe N. Lampley, Huntsville, for appellant.
Gregory N. Hopkins, Asst. City Atty., Huntsville, for appellee.
JAMES H. FAULKNER, Retired Justice.
Juanita Shinault, an employee of the Madison County Commission, was convicted of verbal harassment and resisting arrest in the Huntsville Municipal Court. She was fined $100 and court costs on the resisting arrest charge, and was fined $25 and costs on the harassment charge. She appealed for trial de novo to the Circuit Court of Madison County and was tried by a jury. She was found guilty, and was sentenced to 20 days in jail by the trial judge on each charge, the sentences to run concurrently. She appeals to this court. We reverse and remand.
On the night of November 18, 1989, at or about 9:30 p.m., Huntsville Police Officer Vic Treadway received a dispatcher's call to investigate a citizen complaint about two dogs being confined in a cage in the bed of a pickup truck. The truck was parked at 1035 Clubview Drive, Huntsville Alabama. When Officer Treadway arrived, he noticed that the dogs were in a truck that belonged to the Madison County Animal Control. Because the temperature was in the range of 30 to 40 degrees fahrenheit, Treadway, a "K-9 officer" (i.e., an officer who worked with dogs) and pet lover, was concerned for the well being of the dogs. This prompted him to go to the house at 1035 Clubview and inquire about them. When he knocked on the door, Ms. Juanita Shinault opened it. Treadway testified that Ms. Shinault said, "What in the fuck do you want?" Shinault denies uttering those words. Treadway identified himself as a Huntsville police officer. He stated to Ms. Shinault that he wanted to talk to the man who drove the county dog truck. Treadway says that she called him a "sorry son-of-a-bitch." She testified that she told him, "You don't have to be so damn rude, but I'll go get him." Shinault's son, James Jones, who was the county animal control officer, came to the door. Treadway testified that Jones appeared to be irate.
Treadway and Jones discussed the dogs. Treadway said he was very much concerned about their welfareabout their being out in the cold night, etc. Jones told him the shelter was closed for the weekend and that he did not have a key to it. Moreover, he told Treadway that the dogstwo pit bullswere in no danger. Eventually, he agreed to take the two pit bulls to the shelter if Treadway got a key to open it.
Meanwhile, Treadway, sensing what he believed to be hostility toward him, called for a back-up. Officer Michael Morrison came to the rescue, and along with him came other police officers who are unidentified by name in the record.
While Jones and Treadway were talking, Ms. Shinault reappeared at the door. Treadway testified that she said, "You sons-of-bitch get out of here." She denied that she made the statement. Officer Morrison testified that he heard her say, "son-of-a-bitch" in the singularnot the plural "sons." He further testified that the words were directed to Treadwaynot him and not her son, James Jones, who was also there. By this time, apparently Vic Treadway had had about all that he could take and he began the process of arresting Ms. Shinault for harassment. Thereupon, a real donnybrook erupted. Treadway grabbed Shinault; Jones grabbed Treadway; and Morrison grabbed Jones. They all hit the floor in one fell swoop. After things got under control, Jones and Ms. Shinault were handcuffed and taken to the city jail; Treadway had a bloody face received in the fall; and Morrison appeared to have had no injury.
*698 The two pit bulls, the subjects of this episode, stayed overnight in the pickup truck right where they were when Treadway began his mission to have them sheltered. The animal control director came and picked up the dogs the next morning. They suffered no ill effects.
Ms. Shinault was arrested and charged with resisting arrest and with verbal harassment. The harassment complaint filed by Treadway in the municipal court alleged violation of Huntsville Ordinance § 18-1, which embraced § 13A-11-8(b), Code of Alabama 1975. This section of the Alabama Code pertains to harassing communications, such as communications with a person by use of a telephone, electronic means, telegraph, or mail.
Shinault was tried on the charge of verbal harassment. She was convicted and was fined $25 by the Municipal Court of Huntsville.
When the case was appealed to the circuit court for trial de novo, the complaint against Shinault charged her with violating § 13A-11-8(a), Code of Alabama 1975. This charges a different statutory violation from the charge upon which she was tried and convicted in the municipal court. This court held in Mosley v. City of Auburn, 428 So.2d 165 (Ala.Cr.App.1982), that "on appeal from Municipal Court, the circuit court may allow the prosecution to amend a defective complaint ... where no new or different offense is introduced." (Emphasis added.) See Melech v. State, 42 Ala.App. 465, 168 So.2d 33 (1964).
We conclude that a new and different offense was introduced in the circuit court. Therefore, the conviction of Ms. Shinault on the § 13A-11-8(a) charge must be reversed.
The second charge against Shinault in the circuit court was resisting arrest, in violation of § 13A-10-41, Code of Alabama 1975. This section provides:
"(a) A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person."
The question in this case becomes: Was the arrest of Juanita Shinault a lawful arrest? Shinault was arrested without a warrant. Section 15-10-3, Code of Alabama 1975, sets forth the provisions for arrest without a warrant. Do any of those provisions apply? We think not.
The scenario when Treadway first appeared at Shinault's residence was as follows:
1. He acted on a dispatcher's call indicating that a citizen had complained that two dogs were in the bed of a pickup truck at 1035 Clubview Drive.
2. He went there to investigate.
3. He found them in a county truck parked there by the county animal control officer, James Jones.
4. Jones told Treadway that the dogs were in no danger from the elements.
5. There was no violation of a city ordinance or state law.
6. There was no felony committed, and no misdemeanor committed or being committed in his presence.
It is the opinion of this Court that Treadway had the lawful authority to investigate a citizen's complaint and had authority to go to Shinault's door to inquire about the dogs. But, once having determined that the dogs were under the care and control of the county animal control officer, who had jurisdiction over them, his investigation of the citizen's complaint ceased. His authority and duty were terminated. As long as Treadway acted within the scope of his authority, and was in the performance of his duties, he was not a trespasser. Cf. Clark v. City of Montgomery, 497 So.2d 1140 (Ala.Cr.App.1986); State v. Cook, 319 N.W.2d 809 (S.D.1982). But unlike the duty of the officer in Clark v. City of Montgomery, who stayed around to defuse a neighbor's dispute, Treadway's duty to remain on Shinault's property had ended. His presence there became that of a trespasser. His arrest of Ms. Shinault was not a lawful arrest. See § 13A-10-41, Code of Alabama 1975.
The conviction of Ms. Shinault for resisting arrest is reversed.
*699 The case is remanded to the circuit court.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a Retired Supreme Court Justice, and his opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
PATTERSON, P.J., and McMILLAN, J., concur.
TYSON, J., dissents, without opinion.
BOWEN, J., concurs in the result only, with opinion.
TAYLOR, J., concurs in the result only, without opinion.
BOWEN, Judge, concurring in the result.
Initially, I must express my disapproval of and objection to the manner in which the majority treats the facts of this case.
I agree that the complaint pursuant to Ala.Code 1975, § 13A-11-8(b), was improperly amended to charge an offense pursuant to § 13A-11-8(a). All complaints, even those which do not introduce a "new or different offense," are "absolutely non-amendable without the consent of the defendant" under Rule 15.5, Ala.R.Crim.P. Temp. Mason v. City of Vestavia Hills, 518 So.2d 221, 223 (Ala.Cr.App.1987). If they introduce a new or different offense, they are non-amendable even with the consent of the defendant. See Id.
"[A] person [may] use reasonable force to resist an unlawful arrest." Commentary to Ala.Code 1975, § 13A-3-28 at 71; Commentary to § 13A-10-41 at 380. Ms. Shinault's conviction for resisting arrest is due to be reversed because her arrest for harassment was unlawful.
Officer Treadway's arrest of Ms. Shinault was unlawful because the prosecution did not prove that Shinault committed the misdemeanor of harassment in Treadway's presencenot because Treadway, at some point during the encounter, "became a trespasser" on Shinault's property.
As the majority points out, the crime of "harassing communications" under § 13A-11-8(b) is inapplicable here, since a person commits that offense only if he communicates via telephone, electronic means, telegraph, or mail. A person commits the crime of "harassment" under § 13A-11-8(a) if he:
"a. Strikes, shoves, kicks or otherwise touches a person or subjects him to physical contact; or
"b. Directs abusive or obscene language or makes an obscene gesture towards another person."
The evidence indicates that Officer Treadway "began the process of arresting Ms. Shinault for harassment" before she struck or made any "physical contact" with him. Therefore, Treadway's arrest of Ms. Shinault for harassment could be lawful only if she violated subsection (b) in his presence. Subsection (b) proscribes conduct virtually identical to that proscribed in the disorderly conduct statute:
"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
"....
"(3) In a public place uses abusive or obscene language or makes an obscene gesture."

Ala.Code 1975, § 13A-11-7(a)(3) (emphasis added). The "abusive or obscene language" provision of the disorderly conduct statute "is very narrow and applies only to `fighting words.'" Mosley v. City of Auburn, 428 So.2d 165, 166 (Ala.Cr.App.1982), superceded on other grounds, Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala. Cr.App.1987).
"This Court has defined `fighting words', in light of the United States Supreme Court decisions in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), as follows:
"`[T]hey are those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical *700 retaliation and incite an immediate breach of the peace.'

"Skelton v. City of Birmingham, 342 So.2d 933, 936-37 (Ala.Cr.App.), remanded [on other grounds], 342 So.2d 937 (Ala.1976).
"... As we observed in Skelton, construing a similar Code provision:
"`[T]he statute requires that the words be calculated to cause an immediate breach of the peace. It is not enough ... they merely arouse anger or resentment.'

342 So.2d at 937 (emphasis added)."
Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala.Cr.App.1984). In Swann, we observed that the accused's use of profanity to the arresting officer "may have aroused the anger and resentment" of the officer, but that it was not "calculated to provoke physical retaliation, especially in view of the probable training received by the officer in dealing with similar situations." Id.
Unfortunately, epithets such as "son of a bitch" directed at a police officer in the performance of his duties are not uncommon in today's law enforcement environment. The fact that an officer encounters such vulgarities with some frequency, and the fact that his training enables him to diffuse a potentially volatile situation without physical retaliation, however, means that words which might provoke a violent response from the average person do not, when addressed to a police officer, amount to "fighting words." See generally Annot., 14 A.L.R.4th 1252 (1982).