675 So.2d 97 (1995)
R.I.T.
v.
STATE.
CR-94-1603.
Court of Criminal Appeals of Alabama.
December 29, 1995.
*98 Julius H. Hunter, Jr., Phenix City, for Appellant.
Jeff Sessions, Atty. Gen., and David Bjurberg, Asst. Atty. Gen., for Appellee.
COBB, Judge.
The adjudication of delinquency of the appellant, R.I.T., based on the trial court's finding of disorderly conduct and resisting arrest must be reversed and a judgment rendered in favor of the appellant.
Russell County Deputy Sheriff Chance Corbett testified that while on patrol he was dispatched to the house of the father of the 13-year-old appellant. The appellant's father had requested assistance in investigating an allegation that the appellant had run away while on weekend visitation with his father, who was the noncustodial parent. Corbett stated he was standing in the father's driveway discussing the matter when the appellant and his brother walked up. R. 6. Corbett testified that "when [the appellant] got close enough ... I started talking to him and told him he was going to have to stay home with his father and listen to his father and he started backing away from me.... I went to approach him to talk to him again and he said `fuck you' and then turned to go away from me. That's when I grabbed his arm then and he started resisting [arrest] then." R. 7. Corbett testified that the appellant was "walking away from [Corbett] when he said [`fuck you']" and that the appellant "never threatened" him. R. 9. Corbett testified that he remembered three people, the father, the stepmother, and a brother, "standing around" at the time of the incident. R. 8. He testified that he arrested the appellant for saying "fuck you."
One of the underlying offenses in the delinquency petition was disorderly conduct.
"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
". . . .
"(3) In a public place uses abusive or obscene language or makes an obscene gesture."
". . . ."
Ala.Code 1975, § 13A-11-7(a)(3). The "abusive or obscene language" provision of the disorderly conduct statute "is very narrow and applies only to `fighting words.'" Mosley v. City of Auburn, 428 So.2d 165, 166 (Ala.Cr.App.1982), superseded on other grounds, Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala.Cr.App.1987), and commentary to § 13A-11-7. What language constitutes "fighting words" was discussed in Judge Bowen's concurring opinion in Shinault v. City of Huntsville, 579 So.2d 696, 699-700 (Ala.Cr.App.1991) (Bowen J., concurring). A portion of that discussion follows.
"`This Court has defined "fighting words", in light of the United States Supreme Court decisions in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), as follows:
"`"[T]hey are those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace."
"`Skelton v. City of Birmingham, 342 So.2d 933, 936-37 (Ala.Cr.App.), remanded [on other grounds], 342 So.2d 937 (Ala. 1976).
"`... As we observed in Skelton, construing a similar Code provision:
"`"[T]he statute requires that the words be calculated to cause an immediate breach of the peace. It is not enough... they merely arouse anger or resentment."

"`342 So.2d at 937 (emphasis added) [in Shinault].'"

579 So.2d 696, 699-700. In B.E.S. v. State, 629 So.2d 761, 764 (Ala.Cr.App.1993), this court acknowledged that,
"`[W]ords may or may not be "fighting words," depending upon the circumstances of their utterance.' Lewis v. New Orleans, 415 U.S. [130] at 135, 94 S.Ct. [970] at 973 [39 L.Ed.2d 214 (1974)] (Powell, J., concurring). *99 Accord In re Welfare of S.L.J., 263 N.W.2d 412, 419 (Minn.1978). Words must be evaluated in the era in which they are utteredwords that constitute fighting words change from generation to generation, or even more quickly. Compare Chaplinsky v. New Hampshire, 315 U.S. at 574, 62 S.Ct. at 770 (1942 holding that `the appellations "damned racketeer" and "damned Fascist"` were fighting words) with Robinson v. State, 588 N.E.2d 533, 536 (Ind.App.1992) (Shields, J., dissenting) (1992 dissent arguing that words `motherfuckers' and `fuckers,' `in present common usage, [refer to] "a mean, despicable, or vicious person," and "anything considered to be despicable, frustrating"' and no longer constitute fighting words). As Justice Powell has noted, `[l]anguage likely to offend the sensibility of some listeners is now fairly commonplace in many social gatherings as well as in public performances.' Eaton v. City of Tulsa, 415 U.S. 697, 700, 94 S.Ct. 1228, 1231, 39 L.Ed.2d 693 (1974) (Powell, J., concurring)."
The majority in B.E.S. and Judge Bowen in Shinault pointed out that evaluating what is an acceptable vulgarism in today's society is unnecessary in most cases involving a police officer because a police officer's training should prevent the officer from physical retaliation to any vulgarities.
"In Swann [v. City of Huntsville, 455 So.2d 944, 950 (Ala.Cr.App.1984)], we observed that the accused's use of profanity to the arresting officer `may have aroused the anger and resentment' of the officer, but that it was not `calculated to provoke physical retaliation, especially in view of the probable training received by the officer in dealing with similar situations.' Id.

"Unfortunately, epithets ... directed at a police officer in the performance of his duties are not uncommon in today's law enforcement environment. The fact that an officer encounters such vulgarities with some frequency, and the fact that his training enables him to diffuse a potentially volatile situation without physical retaliation, however, means that words which might provoke a violent response from the average person do not, when addressed to a police officer, amount to `fighting words.' See generally Annot., 14 A.L.R.4th 1252 (1982)."
Shinault v. City of Huntsville, 579 So.2d 696, 700 (Ala.Cr.App.1991) (Bowen, J., concurring). In B.E.S. this court stated:
"We have held that two uses of the word `fuck' did not constitute fighting words when spoken to police officers. See Robinson v. State, 615 So.2d [112] at 114 [(Ala.Cr.App.1992)] (`Fuck R. Lewis' not fighting words when spoken to police officer); L.M.A.W. v. State, 611 So.2d 497, 497-98 (Ala.Cr.App.1992) (`I don't need this fuckin' school anyway' not fighting words when spoken to police chief).
"`". . . .
"... We note that other state courts also adhere to this position. See, e.g., Diehl v. State, 294 Md. 466, 451 A.2d 115, 122 (1982) (saying `fuck you' to police officer did not amount to fighting words), cert. denied, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983); In re Welfare of S.L.J., 263 N.W.2d at 419-20 (saying `fuck you pigs' to police officers did not amount to fighting words). But see, e.g., L.J.M. v. State, 541 So.2d 1321, 1322-23 (Fla.App.) (calling police officer `pussy-assed mother fucker' amounted to fighting words), review denied, 549 So.2d 1014 (Fla.1989); Robinson v. State, 588 N.E.2d 533, 535-36 (Ind.App.1992) (screaming at police officer `to get the fuck away' and calling police officer `lying mother-fucker' amounted to fighting words)."
B.E.S. v. State, 629 So.2d 761, 764 (Ala.Cr. App.1993). We note that under the facts presented in B.E.S., this court ruled that the phrase "shut the F[uck] up" and the admonition to someone not to "let the door hit [her] in the ass when [she] left," 629 So.2d at 764, spoken between two civilians did not constitute fighting words. But see, State v. James M., 111 N.M. 473, 806 P.2d 1063, 1066 (N.M.App.1990), cert. denied, 111 N.M. 529, 807 P.2d 227 (1991) (juvenile defendant's speech amounted to fighting words where he and another civilian were arguing on a public sidewalk; defendant "was flailing his arms" and was repeatedly yelling at civilian, "fuck you" and "fuck you, you don't know who I *100 am"; "both parties were upset"; and "four or five people had gathered to watch").
The words "fuck you" were apparently spoken in front of only family members, to a police officer, as the appellant was walking away from the officer. Under the facts of this case, we do not find that the words uttered by the appellant to the officer, though reprehensible, constituted fighting words. Although the utterance of a profanity to a police officer by a juvenile certainly indicates that the child has problems with authority, it is not a crime under our present law. Therefore, the appellant's adjudication of delinquency must be reversed and a judgment entered in his favor.
Likewise, the appellant's conviction for resisting arrest is due to be reversed because his arrest for disorderly conduct was unlawful. "The law in Alabama is clear that, to a limited degree, a party is justified in attempting to resist an unlawful arrest. A party may use reasonable force to extricate himself from an unlawful arrest." Ex parte Wallace, 497 So.2d 96, 97 (Ala.1986).
REVERSED AND JUDGMENT RENDERED.
All the Judges concur.