On November 15, 2001, Charlotte Owens was found guilty of two counts of harassment, violations of § 13A-11-8(a)(1)(b), Ala. Code 1975. Owens appealed these convictions to the Lauderdale Circuit Court. On January 7, 2002, the two harassment counts at issue, two other harassment counts, and two counts of disorderly conduct were consolidated and presented at a trial de novo in the circuit court. On January 10, 2002, Owens was convicted of two counts of harassment.[1] The circuit court sentenced her, in each case, to three months in jail. Each sentence was to run concurrently to the other. The circuit court split those sentences and ordered Owens to serve five days in jail for each conviction. The circuit court suspended the remainder of Owens's sentences and placed her on probation for two years. This appeal followed.
On August 16, 2001, Vicki Rogers and her daughter, Joy Rogers, were shopping at a Wal-Mart discount store in Florence. While shopping, Vicki and Joy walked down an aisle and encountered Owens and her husband, Ronald Owens. Vicki testified that the Owenses lived near her parents. Vicki's father, Joy's grandfather, was suffering from cancer at the time of the encounter.
According to Vicki and Joy, Owens said, in a loud tone of voice, "Look, Ronald, *Page 280 
there [are] two of those churchgoing hypocrites." (R. 56, 71.) Vicki testified that Owens began to laugh after making that statement. Vicki and Joy testified that they attempted to ignore the comment and continued shopping. Shortly thereafter, in a different aisle of the store, Owens, again in a loud tone of voice, said, "One of those hypocrites is fixing to bust hell wide open. And it's not gonna be too much longer I hear." (R. 58.)
Vicki and Joy testified that they believed the statement referred to Vicki's father, who was also Joy's grandfather, because they had been informed that day that his doctors could do nothing more to treat his cancer. Vicki and Joy testified that Owens's second statement caused other shoppers to stop and look toward the disturbance.
Vicki testified that the statement infuriated her. She testified that her first thought was to grab Owens. Joy testified that the statement upset her and made her mad. Joy stated that she wanted to punch Owens, but that she restrained herself because she did not want to cause any more of a scene than had already been made by the statements.
Owens and her husband, Ronald, testified that they did not go to Wal-Mart on August 16, 2001. Rather, they testified that they had gone to the Salvation Army thrift shop to donate old clothes, toys, and other items. The defense introduced a receipt from the Salvation Army made out to Owens. The receipt was hand-dated August 16, 2001, and listed clothing in the remarks section.
On appeal, Owens argues that, under the circumstances, the statements she allegedly made did not constitute fighting words and thus were, protected by the First Amendment of the U.S. Constitution. Specifically, she contends that the evidence merely tended to show that she made statements to her husband in a conversation and that those statements did not invoke an immediate or violent response from Vicki or Joy Rogers. The State argues that, under the circumstances, the statements constituted fighting words. Thus, the State argues, sufficient evidence was presented to establish that Owens was guilty of harassment. We agree with Owens.
According to § 13A-11-8(a)(1), Ala. Code 1975,
 "[a] person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:
". . . .
 "b. Directs abusive or obscene language or makes an obscene gesture towards another person."
What constitutes abusive or obscene language is dictated by the circumstances surrounding the utterance. R.I.T. v. State, 675 So.2d 97,99 (Ala.Crim.App. 1995). In B.E.S. v. State, 629 So.2d 761
(Ala.Crim.App. 1993), this Court stated:
 "In order to bring § 13A-11-8(a)(1)(b) within the range of constitutionally permitted legislation, we have held that the words `abusive or obscene language,' as used in this statute, are to be "`interpreted narrowly to apply only to `fighting words.'"' Robinson v. State, 615 So.2d 112, 113
(Ala.Cr.App. 1992) (applying Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala.Cr.App. 1984), and Mosley v. City of Auburn, 428 So.2d 165, 166
(Ala.Cr.App. 1982), superseded on other grounds, Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala.Cr.App. 1987), wherein this Court had previously interpreted in the same manner the same words contained in § 13A-11-7(a)(3), the disorderly conduct statute). See also Shinault v. City of Huntsville, *Page 281 579 So.2d 696, 699-700 (Ala.Cr.App. 1991) (Bowen, J., concurring in result)."
629 So.2d at 763. In Robinson v. State, 615 So.2d 112 (Ala.Crim.App. 1992), this Court stated:
 "`Fighting words' are `those words which have a likelihood of causing a violent response by the person to whom they are addressed. They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace.' Skelton v. City of Birmingham, 342 So.2d 933, 936-37 (Ala.Crim.App.), remanded [on other grounds], 342 So.2d 937 (Ala. 1976)."
615 So.2d at 113.
In South v. City of Mountain Brook, 688 So.2d 292 (Ala.Crim.App. 1996), this Court noted:
 "`"Fighting words" are "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284
(1971). The utterance itself must "tend to incite an immediate breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. [568,] 572, 62 S.Ct. [766,] 769 [(1942)]. See also Lewis v. City of New Orleans, 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214
(1974). "It is not enough that [the words] merely arouse anger or resentment," Skelton v. City of Birmingham, 342 So.2d 933, 937 (Ala.Cr.App.), remanded on other grounds, 342 So.2d 937 (Ala. 1976), or that the words are deemed "a socially unacceptable mode of communication," State v. Authelet, 120 R.I. 42, 385 A.2d 642, 649 (R.I. 1978). It is clear that the words must "by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace." Skelton v. City of Birmingham, 342 So.2d at 936-37.'"
688 So.2d at 295 (quoting B.E.S. v. State, 629 So.2d 761, 764
(Ala.Crim.App. 1993)).
Here, Vicki and Joy stated that they were angered by Owens's statements. Both testified that their immediate reaction was to want to grab or punch Owens because of the statements. Additionally, both testified that the second statement drew the attention of other persons.
Clearly, statements about the illnesses of or impending death of a father or other close family member are likely to be hurtful and upsetting. However, we cannot say that they have an increased likelihood of attracting an immediate and violent response. Although we do not condone Owens's comments, those isolated comments, without more, simply do not reach the level of "fighting words" as required by the relevant caselaw. See Conkle v. State, 677 So.2d 1211, 1213 (Ala.Crim.App. 1995) ("I'm going to get you, little girl. You're as good as dead," did not amount to fighting words and would not sustain conviction for harassment).
Because Owens's statements did not amount to "fighting words," her conviction for harassment is due to be reversed and judgment rendered in her favor.
REVERSED AND JUDGMENT RENDERED.
McMillan, P.J., and Baschab, Shaw, and Wise, JJ., concur.
[1] Owens's motion to dismiss was granted in one of the harassment charges and in the two disorderly conduct charges. The jury found Owens not guilty of one of the remaining harassment charges and guilty of the two remaining harassment charges. *Page 282